J-S65038-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ERIC KASHKASHIAN, | |
| Appellant | No. 933 EDA 2014 |

Appeal from the PCRA Order March 14, 2014
in the Court of Common Pleas of Bucks County
Criminal Division at No.: CP-09-CR-0004153-2001

BEFORE:  PANELLA, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED DECEMBER 05, 2014**

Appellant, Eric Kashkashian, appeals from the order of March 14, 2014, which dismissed, following a hearing, his first, counseled petition brought under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

We take the underlying facts and procedural history in this matter from the PCRA court's April 24, 2014 opinion.

> On June 11, 2011, [Appellant] was arrested and charged with two counts of Aggravated Assault, 18 Pa.C.S.[A.] § 2702(a)(3), one count of Disarming Law Officer, 18 Pa.C.S.[A.] § 5104.1(a)(1), one count of Resisting Arrest or Other Law Enforcement, 18 Pa.C.S.[A.] § 5104(a), one count of Disorderly Conduct — Engages in Fighting, 18 Pa.C.S.[A.] § 5503(a)(1),

---

[*] Retired Senior Judge assigned to the Superior Court.

and one count of Disorderly Conduct — Creates a Hazardous or Physically Offensive Condition, 18 Pa.C.S.[A.] § 5503(a)(4).

\* \* \*

On the evening of June 12, 2011, Sergeant Michael Jones and Officers Frederick Williamson and Ryan Hand of the Upper Southampton Township Police Department responded to [Appellant's] residence at 1330 Stephan Way in Upper Southampton Township, Bucks County, Pennsylvania, after receiving a 911 emergency call from there. Upon arrival, they observed that the house was completely dark and heard "very high pitched and shrill" screaming from inside. They heard [Appellant] screaming, "help, they're going to shoot me," and after entering the house, they observed [Appellant] "on his hands and knees in the kitchen, screaming" and a screwdriver, cellphone and a razor knife laying in front of him.

When [Appellant] failed to obey orders to back away from the screwdriver and cutter, Sergeant Jones warned [Appellant] and then deployed a Taser weapon, utilizing the "drive stun method" on him. The five[-]second Taser burst appeared to have no effect on [Appellant], who then stood up and engaged in a violent physical struggle with the police officers attempting to handcuff him. During this struggle [Appellant] bit Officer Williamson's finger, Officer Hand applied his Taser to [Appellant] with no apparent effect, and Sergeant Jones' activated Taser became separated from him in the melee, shocking him and Officer Williamson. [Appellant] then escaped from the three officers and as he ran out of the house, he was again Tasered in his back by Officer Williamson, once again with no apparent effect. [Appellant] ran down the street, but he was subsequently subdued and handcuffed on the ground, still kicking and screaming. [Appellant] was then transported to Doylestown Hospital.

[Appellant], testifying on his own behalf, admitted calling 911, explaining that he had been "scared" because he found a "footprint and blood on the floor" and wanted the FBI and CIA to investigate. He disputed the officers' testimony that he had been screaming, describing it instead as "more or less yelling, trying to make sure my voice goes through a radius of a 2-foot range between my mouth and the cell phone speaker." [Appellant] admitted having prior encounters with the police and

- 2 -

stated he did not comply with the officers this time because he "didn't know they wanted to arrest me." He did not recall stating to the police "I'm going to kick your ass. I'm going to kick the shit out of you," and he denied taking "haymaker" punches at the officers.

(PCRA Court Opinion, 4/24/14, at 1-3) (record citations omitted).

Following a February 2012 jury trial, the jury found Appellant guilty of two counts of aggravated assault and disorderly conduct, and one count of resisting arrest. The jury found Appellant not guilty of disarming a law officer. On May 3, 2012, the trial court sentenced Appellant to an aggregate term of seven years of probation. The trial court also ordered Appellant to pay restitution, the costs of prosecution, and to undergo a mental health evaluation.[1] Appellant did not file a direct appeal.

On February 21, 2013, Appellant filed the instant, timely PCRA petition. The PCRA court appointed counsel on April 11, 2013. Counsel filed an amended PCRA petition on Appellant's behalf on March 5, 2014. A PCRA hearing took place on March 14, 2014. The PCRA Court described the testimony at the hearing as follows:

> [Appellant's] PCRA defense counsel initially presented Jeffrey Drebes, who testified as to [Appellant's] good character and reputation as an honest and peaceful person.
>
> [Appellant] then testified that his uncle, Arsen Kashkashian ("A.K.") had represented him at trial. According to [Appellant], A.K. had a conflict of interest because he had administered

---

[1] The lower court resentenced Appellant to the identical sentence on April 30, 2013, following a probation violation.

[Appellant's] father's estate, and a dispute subsequently arose between [Appellant] and his brother over the distribution of the estate[,] which resulted in litigation. [Appellant] eventually obtained other counsel to represent him in that matter. [Appellant] also claimed that A.K. had failed to obtain discovery he had requested, including Taser calibration information, photos, DNA evidence and medical reports. [Appellant] claimed this evidence would show that he had no Taser marks or medical injuries after the incident, which in turn would indicate that the police "were lying and had set up the crime scene." When queried further as to how this material would be relevant, [Appellant] responded that the "biggest example would be the perjury that the officers have done, the amount of lying and disgrace to the [c]ourt." [Appellant] also claimed that he had expressed a desire to appeal his verdict but A.K. failed to file any appeal or post-sentence motions.

[Appellant] stated that he had ingested Ritalin or Adderal on the date of the incident, but stated that he did not want to pursue a mental health defense strategy as suggested by [A.K.]. When he was shown a photograph, identified as Defense Exhibit 2, 3rd page, showing three marks on his back, he disputed that they were Taser prong marks, and instead insisted that they were "pimples, ingrown hairs. I'm Italian-Armenian, I have to shave my back."

A.K. then testified that he had fifty years of criminal defense experience. He stated that [Appellant] was his nephew whom he had known all his life, and he undertook [Appellant's] representation after he had called him from Brooke Glen, the institution he had been sent to for a mental health evaluation after he had been taken to Doylestown Hospital by the police. A.K. testified that the evidence and testimony presented at the preliminary hearing was consistent with the mental health hearing, police incident reports and the 911 emergency telephone recording. A.K. stated that [Appellant] sounded delusional on the 911 recording, but when they got to trial, [Appellant] claimed it wasn't his voice. A.K. stated that he wanted to assert a mental health defense and obtained a signed order from Judge Boylan for a competency evaluation but [Appellant] was not cooperative. Although the initial evaluation had indicated that he was not competent to stand trial, he was eventually deemed competent after treatment and medication.

Nonetheless, [Appellant] refused to allow A.K. to present such a defense.

A.K. stated that [Appellant] "didn't exactly say the cops were lying but he did say he thought they had used too much force," and he therefore presented that strategy at trial. A.K. felt that the police had been cooperative and believed that the incident had occurred as a result of [Appellant's] mental health issues. A.K. felt he had effectively argued at trial that the police had employed excessive use of the Tasers, but his major problem was that he "had a client who wasn't listening to what we were telling him." A.K. stated that the use of a strategy of calling the police liars, as insinuated by [Appellant], would have "backfired." A.K. testified that although he had negotiated with the District Attorney to have the charges reduced to misdemeanors with an accompanying sentence of two or three years of probation, [Appellant] refused the offer. He stated that [Appellant] insisted on testifying at trial, even though he had advised him not to because he felt there was sufficient doubt and the 911 recording had damaged [Appellant's] credibility. A.K. also felt that character witnesses would have been ineffective and insufficient to challenge the charges.

A.K. stated that [Appellant] had later raised the issue of DNA testing and investigation, but it was untimely because the DNA had not been preserved, and in any event[,] A.K. felt it would be of little or no significance to the case.

A.K. stated that he advised [Appellant] of his appellate rights after sentencing, but advised him not to appeal because the sentence was reasonable. A.K. stated he told [Appellant] to seek other counsel for any appellate matters, and that [Appellant] "did not express any willingness to take an appeal at that moment."

A.K. testified that he had no financial interests that were adverse to [Appellant], and he had only served as counsel to the administrators of his brother's estate, who were the two sons, [Appellant], and Nicholas Kashkashian. Since there was no will and the mother had also passed away, the estate was to be divided equally between the two sons. However, a dispute subsequently developed after this case between the brothers regarding the distribution of the estate assets including the ownership interests in Frankford Associates, a business [that]

A.K. represented as corporate counsel. A.K. stated that he therefore "stepped aside" and the brothers retained separate counsel. A.K. stated that at one time[,] he had power of attorney for [Appellant's] affairs but he had never exercised it because [Appellant's] brother also had power of attorney and had controlled [Appellant's] finances.

Detective James Schirber of the Upper Southampton Police Department explained the use and operation of Taser weapons. He testified that the marks on [Appellant's] back as shown in the photographs introduced earlier were consistent with Taser prong marks, which he said resembled bug bite injuries and would not be discernable a day or two after they occurred.

(PCRA Ct. Op., at 4-7) (record citations omitted).

Immediately following the hearing, the PCRA court found that Appellant's allegation had no merit and denied the PCRA petition. The instant, timely appeal followed. On March 24, 2014, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Appellant filed a timely Rule 1925(b) statement on April 4, 2014. *See id.* On April 24, 2014, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises three questions for our review:

A. Did the [PCRA] court err in finding that Appellant failed to establish that he was denied effective assistance of counsel where trial counsel failed to fully investigate, retain experts, present character witnesses, review evidence, consult with the client, and conduct full and proper cross-examination of witnesses?

B. Did the [PCRA] court err in finding that Appellant failed to establish that he was denied effective assistance of counsel where counsel failed to protect and preserve Appellant's rights to a reconsideration of sentence and direct appellate review?

      C. Did the [PCRA] court err in failing to grant Appellant's request for a post-conviction DNA analysis and examination of the physical evidence?

(Appellant's Brief, at 4).

Our standard of review is long settled. "Our standard of review from the grant or denial of post-conviction relief is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. We will not disturb findings that are supported by the record." **Commonwealth v. Ousley**, 21 A.3d 1238, 1242 (Pa. Super. 2011), *appeal denied*, 30 A.3d 487 (Pa. 2011) (citations omitted). "The court's scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party." **Commonwealth v. Duffey**, 889 A.2d 56, 61 (Pa. 2005) (citation omitted). Further, to be eligible for relief pursuant to the PCRA, Appellant must establish that his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S.A. § 9543(a)(2). He must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. **See** 42 Pa.C.S.A. § 9543(a)(3). An allegation of error "is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b).

Here, Appellant raises three issues, all challenging trial counsel's stewardship. (*See* Appellant's Brief, at 4). Counsel is presumed effective, and an appellant bears the burden to prove otherwise. *See Commonwealth v. McDermitt*, 66 A.3d 810, 813 (Pa. Super. 2013). The test for ineffective assistance of counsel is the same under both the Federal and Pennsylvania Constitutions. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Commonwealth v. Jones*, 815 A.2d 598, 611 (Pa. 2002). An appellant must demonstrate that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *See Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001), *abrogated on other grounds by Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Jones*, *supra* at 611 (citation omitted).

In his first claim, Appellant alleges multiple instances of ineffective assistance of trial counsel. (*See* Appellant's Brief, at 13-18). Appellant claims that counsel was ineffective for failing to discuss with him and obtain a waiver for a conflict of interest based upon counsel's involvement with the distribution of Appellant's father's estate. (*See id.* at 14-15). Further, Appellant avers that counsel was ineffective for failing to obtain and present

as evidence Appellant's medical records from Doylestown Hospital and his mental health records from Brooke Glen Hospital. (*See id.* at 15-16). Appellant also maintains that counsel was ineffective for failing to present the testimony of character witness Jeffrey Drebes. (*See id.* at 16). Additionally, Appellant contends that that trial counsel was ineffective for failing to call expert witnesses regarding the appropriate use of a Taser and regarding DNA analysis. (*See id.* at 16-17). Lastly, Appellant states that counsel was ineffective for failing to request jury instructions regarding good character, self-defense, or involuntary act. (*See id.* at 17-18).

With respect to Appellant's claim of conflict of interest, the United States Supreme Court has held that, "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980) (footnote omitted). The Supreme Court later stated, "it [is] at least necessary, to void the conviction, for petitioner to establish that the conflict of interest adversely affected his counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 174 (2002). Further,

> [t]o establish a breach of that duty [of loyalty], the client must show the existence of an actual conflict of interest that adversely affected the outcome of the case. An actual conflict of interest is evidenced whenever during the course of representation, the interests of appellant—and the interests of another client towards whom counsel bears obligations—diverge with respect to a material factual or legal issue or to a course of action.

*Commonwealth v. Tedford*, 960 A.2d 1, 54 (Pa. 2008) (citations and quotation marks omitted). Thus, "multiple representation, in itself, does not give rise to presumed denial of counsel. Rather, the burden remains on the defendant to demonstrate that the asserted conflict adversely affected his lawyer's performance." *Commonwealth v. King*, 57 A.3d 607, 618 (Pa. 2012) (citations omitted).

Here, Appellant has not met this standard. The record demonstrates that it was his decision to retain his uncle to represent him. (*See* N.T. PCRA Hearing, 3/14/14, at 22). Further, Appellant knew at that time that counsel also represented Appellant and his brother as co-administrators of his father's estate, because such representation began in 2009, some two years prior to the incident at issue. (*See id.* at 22, 90). Counsel had no financial interest in the estate. (*See id.*). Lastly, Appellant's own exhibits demonstrate that the dispute over the estate did not arise until November 2012, some nine months after the trial in the instant matter. (*See id.* at 41-42; D-7, D-8).

Appellant has utterly failed to provide any evidence, beyond a bald statement that a conflict of interest existed, which would demonstrate any actual prejudice suffered by him because of the alleged conflict. (*See* Appellant's Brief, at 15). Appellant has not pointed to any witnesses counsel did not interview, any questions counsel did not ask, or any argument counsel failed to make because of the alleged conflict of interest. (*See id.*).

Appellant's claim that trial counsel was ineffective because of a conflict of interest fails. **See Tedford**, **supra** at 54 (appellant failed to establish actual conflict of interest and prejudice resulting from public defender's representation of two Commonwealth witnesses at his trial where there was no evidentiary support for his claim that lawyer was present when Commonwealth made undisclosed deals with witnesses and lawyer had concluded representation of witnesses prior to appellant's trial); **see also Commonwealth v. Weiss**, 81 A.3d 767, 794-96 (Pa. 2013) (appellant failed to show actual conflict of interest based upon counsel's prior representation of various Commonwealth witnesses, where counsel no longer represented individuals and appellant did not show that prior representation adversely affected counsel's performance).

Appellant next claims that counsel was ineffective for failing to obtain and present as evidence his medical records from Doylestown Hospital and his mental health records from Brooke Glen Hospital. (**See id.** at 15-16). Because Appellant's argument is undeveloped, this claim must fail.

The records in question were admitted as exhibits at the PCRA hearing, (**see** N.T. PCRA Hearing, 3/14/14, at 31, 33), and Appellant claimed, without much specification or reference to any particular portion of the records, that they would show that the police lied, (**See id.** at 29-33). On appeal, Appellant fails to explain why these records would have been relevant and admissible at trial, especially because he refused to present a

mental health defense. (*See* Appellant's Brief, at 15-16; N.T. PCRA Hearing, 3/14/14, at 73-75); *see also* Pa.R.E. 402 ("Evidence that is not relevant is not admissible."). Appellant's argument on this issue consists of four sentences. They baldly state that counsel was aware of these records and that the records would have supported Appellant's claim that the police were lying. (*See* Appellant's Brief at 15-16). However, the argument does not include any reference to the records, the facts underlying the claim, or citation to pertinent legal authority. (*See id.*). This Court will not act as counsel and will not develop arguments on behalf of an appellant. *See In re R.D.*, 44 A.3d 657, 674 (Pa. Super. 2012), *appeal denied*, 56 A.3d 398 (Pa. 2012). When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we can dismiss the appeal entirely or find certain issues to be waived. *See* Pa.R.A.P. 2101; *R.D.*, *supra*. at 674. Accordingly, we find Appellant's claim waived.

Appellant next contends that counsel was ineffective for failing to present the testimony of character witness Jeffrey Drebes. (*See* Appellant's Brief, at 16). Again, we note that Appellant's argument on this issue consists of three sentences and is utterly devoid of citation to legal authority. (*See id.*). Thus, Appellant has waived this claim. *See* Pa.R.A.P. 2101; *R.D.*, *supra*. at 674.

Moreover, it is without merit. In order to show that trial counsel was ineffective in failing to present the testimony of the additional witnesses, Appellant must demonstrate:

> the existence of and the availability of the witnesses, counsel's actual awareness, or duty to know, of the witnesses, the willingness and ability of the witnesses to cooperate and appear on the defendant's behalf and the necessity for the proposed testimony in order to avoid prejudice. Moreover, [an a]ppellant must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case.

*Commonwealth v. Gibson*, 951 A.2d 1110, 1133-1134 (Pa. 2008) (quotation marks and citations omitted).

Even assuming, *arguendo*, that Appellant has demonstrated that counsel was aware of the existence of the witness and that the witness was willing and able to testify, Appellant's claim must still fail.

Firstly, Appellant argues that the witness would have testified as to his reputation for truthfulness. (*See* Appellant's Brief, at 16). However, our review of the record demonstrates that such testimony would not have been admissible in his case. In *Commonwealth v. Fulton*, 830 A.2d 567 (Pa. 2003), the Pennsylvania Supreme Court reaffirmed the long-standing principle that rehabilitative evidence of a defendant's good reputation for truthfulness is admissible only in cases where either the character trait of truthfulness is implicated by the elements of the charged offenses, or in cases where the Commonwealth specifically impeached the defendant's

reputation for truthfulness. *See Fulton*, *supra* at 572-73. The Pennsylvania Supreme Court went on to explain that:

> where the prosecution has merely introduced evidence denying or contradicting the facts to which the defendant testified, but has not assailed the defendant's community reputation for truthfulness generally, evidence of the defendant's alleged reputation for truthfulness is not admissible. Similarly, cross-examination of the defendant that challenges the veracity of his testimony in the particular case, but does not touch upon his general reputation in the community for being truthful, does not open the door to the introduction of good character evidence concerning reputation for truthfulness.

*Id.* at 573 (citations omitted).

Here, we have reviewed the record, and the elements of the charged offenses did not implicate the character trait of truthfulness. Further, Appellant does not point to any instance wherein the Commonwealth impugned his reputation for truthfulness. (*See* Appellant's Brief, at 16). Thus, Appellant has not demonstrated that the Commonwealth ever "attacked, impugned or otherwise besmirched his general reputation in the community for telling the truth." *Fulton*, *supra* at 573. Therefore the witness's testimony would not have been admissible with respect to showing his truthfulness. *See id.*

Secondly, to the extent that Appellant sought to have the witness testify as to his reputation for law-abidingness and peacefulness (*see* Appellant's Brief at 16), the record demonstrates that proposed witness Jeffrey Drebes would not have qualified as a character witness. Drebes testified as to his personal opinion of Appellant, not his reputation in the

community for peacefulness or law-abidingness. (**See** N.T. PCRA Hearing, 3/14/14, at 17, 19-20). Drebes admitted that he did not know Appellant's general reputation in the community. (**See id.** at 19). To qualify as a character witness, the witness must be able to testify to the defendant's general reputation in the community, rather than his personal opinion of the him. **See Commonwealth v. Presbury**, 478 A.2d 21, 25 (Pa. Super. 1984). Trial counsel is not ineffective for failing to call a proposed character witness, who would not have qualified as character witness. **See id.** Appellant's claim lacks merit.

Next, Appellant avers that that trial counsel was ineffective for failing to call expert witnesses to testify regarding the appropriate use of a Taser and about DNA analysis. (**See** Appellant's Brief, at 16-17). "To establish ineffective assistance of counsel for the failure to present an expert witness, appellant must present facts establishing that counsel knew or should have known of the particular witness." **Commonwealth v. Millward**, 830 A.2d 991, 994 (Pa. Super. 2003), *appeal denied*, 848 A.2d 928 (Pa. 2004) (citation omitted). Further, "the defendant must articulate what evidence was available and identify the witness who was willing to offer such evidence." **Commonwealth v. Bryant**, 855 A.2d 726, 745 (Pa. 2004) (citations omitted). Appellant's amended PCRA petition did not identify any witness willing to offer expert testimony. (**See** Amended PCRA Petition, 3/05/14, at unnumbered pages 1-5). Therefore, his claim fails. **See**

*Bryant*, *supra* at 745; *see also Commonwealth v. Gwynn*, 943 A.2d 940, 945 (Pa. 2008) (citations omitted) (when defendant claims counsel was ineffective for failing to introduce expert testimony at trial he must articulate "what evidence was available and identify a witness who was willing to offer such [evidence].")

Also, Appellant states that counsel was ineffective for failing to request jury instructions regarding good character, self-defense, and involuntary act. (*See* Appellant's Brief, at 17-18). However, Appellant did not include this issue in his Rule 1925(b) statement. (*See* Statement of Matters Complained of on Appeal, 4/04/14, at unnumbered pages 1-2). Therefore, the PCRA court did not address this claim in its Rule 1925(a) opinion. (*See* PCRA Ct. Op., at 8-18). As amended in 2007, Rule 1925 provides that issues that are not included in the Rule 1925(b) statement or raised in accordance with Rule 1925(b)(4) are waived. *See* Pa.R.A.P. 1925(b)(4)(vii); *see also Commonwealth v. Lord*, 719 A.2d 306, 308 (Pa. 1998), *superseded by rule on other grounds as stated in Commonwealth v. Burton*, 973 A.2d 428, 430 (Pa. Super. 2009).

Further, Appellant did not raise this issue in his statement of the questions involved. (*See* Appellant's Brief, at 4). The Rules of Appellate Procedure provide that issues to be resolved must be included in the statement of questions involved or "fairly suggested" by it. Pa.R.A.P. 2116. This issue is not included in the statement of questions involved, nor is it

"fairly suggested" by it. Thus, we hold that Appellant has waived his claim that trial counsel was ineffective for failing to request certain jury instructions. *See* Pa.R.A.P. 1925(b)(4)(vii); *see also Commonwealth v. Harris*, 979 A.2d 387, 397 (Pa. Super. 2009) (holding claim waived when not included in statement of questions involved).[2] Therefore, Appellant's first challenge lacks merit.

In his second issue, Appellant claims that trial counsel was ineffective for failing to file a motion for reconsideration of sentence and for failing to file a direct appeal. (*See* Appellant's Brief, at 19-22). We disagree.

With respect to Appellant's claim that trial counsel was ineffective for failing to file post-sentence motions, we note that in *Commonwealth v. Reaves*, 923 A.2d 1119 (Pa. 2007), our Supreme Court explained that while there are some limited situations in which prejudice may be presumed by counsel's inaction, the failure to file post-sentence motions is not one of those situations. *See Reaves*, *supra* at 1128-29. Our Supreme Court reaffirmed this holding in *Commonwealth v. Liston*, 977 A.2d 1089 (Pa. 2009), stating "[p]resumably, since post-sentence motions are optional . . . rarely will counsel be deemed to have been ineffective for failing to file them

---

[2] We note that in his statement of the questions involved, Appellant alleges that counsel was ineffective for failing to cross-examine witnesses. (*See* Appellant's Brief, at 4). However, Appellant abandons this claim in the body of his brief. (*See id.* at 13-18). Therefore, he has waived the claim. *See Jones*, *supra* at 604 n.3 (claims raised in the statement of questions involved but not pursued in the body of the brief are waived).

except, for example, when the claim involves the discretionary aspects of sentence or a challenge to a verdict on weight of the evidence grounds, claims which must be raised in the trial court to be preserved for purposes of appellate review." **Liston**, **supra** at 1094 n.10 (citation omitted).

Here, assuming *arguendo* that Appellant actually requested that trial counsel file a post-sentence motion, he has failed to demonstrate any prejudice based upon the failure to do so. Appellant claims that, in a post-sentence motion, he wished to challenge the sufficiency of the evidence, the weight of the evidence, evidentiary rulings, and the sentence itself. (**See** Appellant's Brief, at 20). He further argues that the failure to file a post-sentence motion prohibited appellate review of these issues. (**See id.**).

However, Appellant has not provided any legal support for his contention that the failure to file a post-sentence motion waived appellate review of the sufficiency of the evidence or any of the unspecified evidentiary challenges. We note that Pennsylvania Rule of Criminal Procedure 606 and its comments make clear that an appellant may raise the issue of sufficiency of the evidence for the first time on appeal. **See** Pa.R.Crim.P. 606(A)(7).

A challenge to the discretionary aspects of sentence is waived if not raised in post-sentence motions. **See Commonwealth v. McAfee**, 849 A.2d 270, 275 (Pa. Super. 2004), *appeal denied*, 860 A.2d 122 (Pa. 2004). However, Appellant has failed to specify the nature of the challenge to the

discretionary aspects of sentence and has failed to argue that counsel's filing of a post-sentence motion challenging the discretionary aspects of sentence would have had any likelihood of success, given that Appellant was sentenced to probation. Thus, this undeveloped claim lacks merit. *See Pierce*, *supra* at 213.

Appellant's argument regarding the weight of the evidence is equally vague. Appellant generally states that counsel should have challenged "[i]nconsistencies in testimony between the officers [and i]consistency between testimony and the circumstantial evidence." (Appellant's Brief, at 20). However, Appellant does not highlight any inconsistencies in the testimony or the circumstantial evidence and, at the PCRA hearing, trial counsel testified, without contradiction, that there were few inconsistencies in the officers' testimony. (*See* Appellant's Brief, at 20; N.T. PCRA Hearing, 3/14/14, at 72, 75). Our review of the record also demonstrates that any inconsistencies between the officers' testimony was minimal. (*See* N.T. Trial, 2/16/12, at 20-84). It is long settled that "[b]efore a trial court may award a new trial on [the] ground [that the verdict is against the weight of the evidence,] it must appear that the verdict was so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative." *Commonwealth v. Hunter*, 554 A.2d 550, 555 (Pa. Super. 1989) (citation and footnote omitted). Appellant does not discuss this standard, (*see* Appellant's Brief, at 20), and does not argue that, had

counsel filed a post-sentence motion challenging the weight of the evidence, the result would have been different. (*See id.*).

Therefore, with respect to the claim that counsel was ineffective for failing to file post-sentence motions, Appellant has failed to set forth the ineffectiveness analysis required by *Strickland*. (*See* Appellant's Brief, at 19-20). Because Appellant has not established any of the three prongs, we must deem counsel's assistance constitutionally effective. *See Commonwealth v. Rolan*, 964 A.2d 398, 406 (Pa. Super. 2008) (holding that where appellant fails to address three prongs of ineffectiveness test, he does not meet his burden of proving ineffective assistance of counsel, and counsel is deemed constitutionally effective). Accordingly, Appellant's claim that counsel was ineffective for failing to file post-sentence motions must fail.

Appellant also claims that trial counsel was ineffective for failing to file a requested direct appeal. (*See* Appellant's Brief, at 21-22). It is settled that if counsel ignores a defendant's request to file a direct appeal, the defendant is entitled to have his appellate rights restored. *See Commonwealth v. Lantzy*, 736 A.2d 564, 572 (Pa. 1999).

> In *Lantzy*, our Supreme Court held that an unjustified failure to file a direct appeal upon request is prejudice *per se*, and if the remaining requirements of the PCRA are satisfied, a defendant does not have to demonstrate his innocence or the merits of the issue he would have pursued on appeal to be entitled to relief. However, such relief is appropriate only where the petitioner pleads and proves that a timely appeal was in fact requested and that counsel ignored that request. A mere allegation will not

suffice to prove that counsel ignored a petitioner's request to file an appeal.

***Commonwealth v. Spencer***, 892 A.2d 840, 842 (Pa. Super. 2006) (citations omitted).

At the PCRA hearing, Appellant testified that, both before and after sentencing, he informed counsel that he wanted to file an appeal. (***See*** N.T. PCRA Hearing, 3/14/14, at 42-43, 61-62). He denied that counsel had ever told him that he was unwilling to file an appeal and that he needed to seek new counsel. (***See id.*** at 61-62).

Counsel, however, testified that, following the sentencing hearing, he explained Appellant's appeal rights to him, explained to him that he did not believe Appellant had grounds for an appeal, and advised him that if he wished to appeal he needed to find new counsel. (***See id.*** at 87-88). Counsel confirmed this conversation in a letter to Appellant. (***See id.*** at 88; Commonwealth's Exhibit 1, Letter, 5/23/12, at unnumbered page 1). Counsel stated that, after their conversation, Appellant was no longer interested in taking an appeal. (***See*** N.T. PCRA Hearing, 3/14/14, at 87-88).

The PCRA court accepted counsel's testimony and did not accept Appellant's testimony. It found that Appellant was uninterested in taking an appeal, stating, "[Appellant] . . . opted not to file a direct appeal." (PCRA Ct. Op., at 11; ***see also id.*** at 6). The PCRA court further characterized Appellant's claim that counsel was ineffective for failing to fail a direct appeal as "another baseless assertion." (***Id.*** at 13). Our review of the record

supports that determination. When a PCRA court finds that the petitioner's testimony that he requested an appeal is not credible, this Court will not disturb those findings. *See Commonwealth v. Maynard*, 900 A.2d 395, 398 (Pa. Super. 2006) (rejecting claim that counsel failed to file requested direct appeal after PCRA court found the appellant's testimony not credible and record supported PCRA court's findings); *see also Commonwealth v. Harmon*, 738 A.2d 1023, 1025 (Pa. Super. 1999), *appeal denied*, 753 A.2d 815 (Pa. 2000) (same). Appellant's second claim lacks merit.

In his third claim, Appellant alleges that the PCRA court erred in denying his request for post-conviction DNA analysis and examination of the physical evidence. (*See* Appellant's Brief, at 23-24). We disagree.

Initially, we note that motions for post-conviction DNA testing, while considered post-conviction petitions under the PCRA are "separate and distinct" from claims pursuant to other sections of the PCRA; thus, the one-year time bar does not apply to them. *Commonwealth v. Perry*, 959 A.2d 932, 938 (Pa. Super. 2008) (citation omitted). We review a denial of a post-conviction petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. *See Commonwealth v. McClellan*, 887 A.2d 291, 297 (Pa. Super. 2005), *appeal denied*, 897 A.2d 453 (Pa. 2005).

42 Pa. C.S.A. § 9543.1 provides, in relevant part:

**(a) Motion**.—

(1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

\* \* \*

**(c) Requirements**.—In any motion under subsection (a), under penalty of perjury, the applicant shall:

(1)  (i) specify the evidence to be tested;

\* \* \*

(2) (i) assert the applicant's actual innocence of the offense for which the applicant was convicted; and

\* \* \*

(3) present a *prima facie* case demonstrating that the:

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A) the applicant's actual innocence of the offense for which the applicant was convicted. . .

42 Pa.C.S.A. § 9543.1(a), (c)(1)(i), (c)(2)(i), (c)(3)(i), (c)(ii)(a).

Appellant has not complied with these requirements. Firstly, Appellant did not file a proper petition pursuant to 42 Pa.C.S.A. § 9543.1. Instead, the request for post-conviction DNA testing is somewhat vaguely made in paragraph 13 of his amended PCRA petition. (*See* Amended PCRA Petition, 3/05/14, at unnumbered page 4, ¶ 13). Secondly, Appellant has not alleged that he is serving a term of imprisonment; rather the record reflects that he was sentenced to probation. (*See* PCRA Ct. Op., at 3). Thus, he is not eligible for post-conviction DNA testing pursuant to 42 Pa.C.S.A. § 9543.1.[3] *See Commonwealth v. Frederick*, 929 A.2d 214, 219 (Pa. Super. 2007). Accordingly, his claim that the trial court erred in denying his request for post-conviction DNA testing fails.

Order affirmed.

---

[3] Moreover, Appellant would also not be eligible for post-conviction DNA testing, because the verdict in this matter was not rendered before January 1, 1995, and counsel did not seek funds at trial for DNA testing and have that request refused. *See* 42 Pa.C.S.A. § 9543.1(a)(2).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/5/2014