J-S33027-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEO JOSEPH MCALLISTER | : | |
| | : | |
| Appellant | : | No. 160 WDA 2023 |

Appeal from the PCRA Order Entered January 9, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007751-2017

BEFORE: BENDER, P.J.E., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.: **FILED: December 18, 2023**

Leo Joseph McAllister (Appellant) appeals from the order entered in the Allegheny County Court of Common Pleas denying his petition filed pursuant to the Post Conviction Relief Act[1] (PCRA) after his jury convictions of indecent assault and corruption of minors.[2] He argues the PCRA court abused its discretion when it dismissed his PCRA petition without a hearing after he alleged his trial counsel was ineffective for failing to cross-examine the minor victim's parents regarding their potential bias against him. We affirm.

This Court provided a recitation of the underlying facts of this matter in a prior memorandum, which is not necessary for our disposition here.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. §§ 3126(a)(8), 6301(a)(1)(i).

Instead, we briefly note that Appellant was the former landlord of Sandy Marbury (Mother) and Marlana Wood (Stepmother). N.T. Jury Trial, 6/7-11/19, at 194-95.[3] Mother and Stepmother lived in their home with their 14-year-old son (Victim).[4] *Id.* at 194. In 2017, while renting their home from Appellant, Mother and Stepmother contacted the police to report Appellant acting inappropriately with Victim. *See id.* at 198-99.

Appellant was subsequently charged with two counts of indecent assault — person under 16, and one count each of involuntary deviate sexual intercourse, unlawful contact with a minor, corruption of minors graded as a third-degree felony, and terroristic threats.[5] *Commonwealth v. McAllister*, 23 WDA 2021 (unpub. memo at 1-2) (Pa. Super. Jan. 11, 2022). This matter was joined for trial with another case in which Appellant was charged with threatening one of Victim's parents, stalking Victim, and loitering around Victim's home. *Id.* at 2. Both cases proceeded to a five-day jury trial on June 7, 2019, where Appellant was represented by Brandon Herring, Esquire (Trial Counsel).

---

[3] The record contains two volumes of notes of testimony, both dated June 7 through June 11, 2019. One volume is labeled "Volume II" while the other has no equivalent heading. Both volumes are continuously paginated, with Volume II beginning at page 164.

[4] Stepmother's two daughters and mother also lived in the home. N.T. Jury Trial at 194.

[5] 18 Pa.C.S. §§ 3123(a)(7), 6318(a)(1), 6301(a)(1)(ii), 2706(a)(1), respectively.

The Commonwealth presented Mother and Stepmother at trial who both testified to the following. When they moved into their home, Appellant was "like a mentor" to Victim and Victim often went to Appellant's home to learn how to lay drywall and floors, and how to paint. N.T. Jury Trial at 186, 196. However, between January and March of 2017, Mother and Stepmother's relationship with Appellant began to deteriorate. *Id.* at 173. They detailed Appellant: (1) called Mother and Stepmother up to seven times a day for "several weeks" to ask where Victim was or if Victim could come to aid Appellant with work around his home; (2) sometimes "scream[ed]" Victim's name; (3) visited their home "frequently" and on one occasion told Mother he had "blue balls[;]" (4) sometimes "walk[ed] past [the] house and scream[ed] out fat ass[,]" despite Mother asking him "several times" to stop; (5) "constantly" entered their yard "uninvited" to sit on a picnic bench where he would "watch up [their] son's window[;]" (6) watched Victim get off the school bus "[e]very day" for "[o]ver a month[;]" (7) asked Stepmother about Victim's underwear size; and (8) approached Stepmother and her daughter in front of their home, "poured [gasoline] on the front step [and] said that he was going to burn the house down[.]" *Id.* at 173-177, 181, 197-98, 202-05.

Mother and Stepmother also testified that around February or March of 2017, Victim's behavior started to change. *See* N.T. Jury Trial at 183, 196-197. Victim was "afraid" to stay in his room at times, was "afraid to go to Appellant's home," "started wetting his pants, having nightmares, putting holes in the wall[,] acting out, taking seven showers a day[, and] throwing his

underwear away[,] confine[d] himself in the one room[,]" started distancing himself from people, and told Stepmother he was "ashamed of himself." *Id.* at 182-84, 196-97. Stepmother eventually told Appellant he was no longer allowed to see Victim, and but Appellant "seemed angry[.]" *Id.* at 199-200.

Between the spring and summer of 2017, Victim informed his parents that Appellant touched him inappropriately. N.T. Jury Trial at 208. After Victim's initial disclosure, he eventually informed Stepmother that Appellant "was sucking on his genital area" and kissing him. *Id.* at 209-10. Initially, Victim did not tell Stepmother all the details of the assault because he was "embarrassed." *Id.* at 210. Stepmother and her family could not immediately move because they "didn't have the funds[,]" but did so as soon as they could. *Id.* at 209. Stepmother stated that she and Mother did not owe Appellant any money and their rent was paid. *Id.*

As Appellant's issue on appeal challenges Trial Counsel's cross-examination of Mother and Stepmother as to their credibility, we review his cross examination. Trial Counsel elicited the following testimony from Mother: (1) Mother initially permitted Appellant to teach Victim how to lay drywall and floors and paint because she believed Appellant could become a "mentor figure" to Victim; (2) Mother knew Shirley Fillipino — Appellant's former girlfriend — because she was a family friend; (3) the timeframe in which Appellant was dating Fillipino overlapped with instances where he called Mother names and Fillipino "told [Appellant] to stop, [and that it was] ignorant[;]" (4) Appellant and Fillipino ended their relationship in February of

- 4 -

2017; and (5) Mother was no longer friends with Fillipino. N.T. Jury Trial at 186, 189-90.

When cross-examining Stepmother, Trial Counsel elicited the following information: (1) she and Mother met Appellant through Fillipino; (2) Stepmother did not know when Appellant and Fillipino ended their relationship; (3) she had a "problem" with Appellant asking Victim to go to his home; and (4) her relationship with Appellant as her landlord deteriorated after Victim told her about Appellant's behavior. N.T. Jury Trial at 211-13. Trial Counsel also pointed out that in Stepmother's initial statement to police, she stated that Appellant: (1) admitted to her that he set a car on fire for insurance money; (2) "confessed . . . that he had his house shot up and was going to blame [Fillipino] for that shooting[;]" (3) asked Stepmother to sign a blank check from his father; and (4) was stealing from local stores and a church. *Id.* at 215-17. At trial, however, Stepmother could not recall when Appellant would have had time to "confess" to these events. *Id.* at 219.

Stepmother also noted in her statement to police that she kept her children away from Appellant because he was watching their house and calling Mother a "fat ass[.]" N.T. Jury Trial at 218. Trial Counsel highlighted, however, and Stepmother agreed, that it was not until "two thirds down the page in the written [police] statement" that she claimed Appellant "ke[pt] wanting [Victim] to come over and help him work on his house" and that she prohibited Victim from going to Appellant's home "because [Appellant kept] talking nasty around him and is trying to be close to him." *Id.* at 217-18.

Lastly, Stepmother testified she could not remember if she made a report to police about Appellant's behavior before or after Victim disclosed that Appellant assaulted him; Stepmother stated "[e]verything was very confusing." *Id.* at 233-34.

At the conclusion of the trial,

the jury found Appellant guilty of corruption of minors and one count of indecent assault, but acquitted Appellant of the [remaining charges.]

[On September 3, 2019, the trial court] sentenced Appellant to 25 to 50 years' imprisonment on the indecent assault conviction pursuant to 42 Pa.C.S. § 9718.2 (prescribing mandatory minimum and maximum sentences where the defendant has previously been convicted of a sexual offense) and a concurrent term of 2 to 4 years' imprisonment for corruption of minors graded as a third-degree felony.

*McAllister*, 23 WDA 2021 (unpub. memo at 2-3) (paragraph break added & record citation omitted).

Appellant filed a post-sentence motion challenging the constitutionality of his mandatory minimum sentence, which the trial court denied. Appellant did not file a timely direct appeal, but instead, on August 17, 2020, filed a PCRA petition seeking reinstatement of his appellate rights *nunc pro tunc*. The PCRA court reinstated his appellate rights, and he filed a timely appeal to this Court. He argued his sentence for corruption of minors, graded as a third-degree felony, was illegal because the jury was not instructed on "course of conduct," which is required for a felony grading of this offense. *See McAllister*, 23 WDA 2021 (unpub. memo. at 3). On January 11, 2022, this

Court agreed and vacated Appellant's sentence for corruption of minors and remanded the matter for resentencing.[6]  ***Id.*** at 11.  On March 31, 2022, the trial court resentenced Appellant for corruption of minors graded as a first-degree misdemeanor to the same sentence, of two to four years' incarceration, to run concurrently with his 25-to-50-year sentence for indecent assault.

On April 6, 2022, Appellant filed a *pro se* PCRA petition raising, *inter alia*, claims of ineffective assistance of Trial Counsel.  **See** Appellant's *Pro Se* PCRA Petition, 4/6/22, at 2.  The PCRA court appointed counsel who, on October 20th, filed an amended petition, which argued Trial Counsel was ineffective for failing to cross-examine Mother and Stepmother about whether they fabricated the allegations against Appellant as a ploy to stop paying rent. Appellant's Amended PCRA Petition, 10/20/22, at 11-12.  On November 28th, the PCRA court filed a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without an evidentiary hearing.  Appellant did not file a response and the court dismissed Appellant's petition on January 9, 2023. This timely appeal followed.[7]

On appeal, Appellant raises the following claim for our review:

_____

[6] Appellant did not file a petition for review with the Pennsylvania Supreme Court.

[7] Appellant complied with the PCRA court's order to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Did the [PCRA court] abuse its discretion in denying the PCRA petition, as amended, without a hearing where [Appellant] set forth a meritorious claim concerning material facts; specifically, that [Trial] Counsel was ineffective for failing to elicit critical testimony and/or conduct effective cross-examination of Commonwealth witnesses [Mother] and [Stepmother] to show their bias, interest and motive for fabricating their allegations against [Appellant]?

Appellant's Brief at 4.

Before we may address the merits of Appellant's argument, we must determine if his PCRA petition was properly filed.

[T]he PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of the petition. In other words, Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition. The PCRA requires a petition, including a second or subsequent petition, to be filed within one year of the date the underlying judgment becomes final. A judgment of sentence is final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review.

*Commonwealth v. Ballance*, 203 A.3d 1027, 1031 (Pa. Super. 2019) (citations, quotation marks, and emphasis omitted); *see also* 42 Pa.C.S. § 9545(b)(1), (3).

We consider *Commonwealth v. Lesko*, 15 A.3d 345 (Pa. 2011), which involved procedural history similar to that in this case. In *Lesko*, the defendant was found guilty of murder and related crimes in 1981. *Lesko*, 15 A.3d at 357. This Court affirmed his judgment of sentence. *Id.* Subsequently, the defendant filed a petition for writ of *habeas corpus* in federal district court, and in 1991, the United States Court of Appeals for the Third Circuit granted sentencing relief on his *habeas* petition. *Id.* The

defendant was thus resentenced in 1995, and thereafter, he filed a direct appeal, challenging the new sentence only. *Id.* at 358. This Court affirmed his sentence and in 1999, the United States Supreme Court denied his petition for *certiorari*. *Id.* In February of 1999, the defendant filed a *pro se* PCRA petition challenging both his sentence and his conviction. *Id.* The PCRA court granted relief. The Commonwealth appealed to this Court, arguing the defendant's time for filing a PCRA petition regarding the guilt phase of his proceedings expired in January of 1997. *See id.* at 359. The defendant replied that his judgment of sentence became final in 1999, when the United States Supreme Court denied review after his 1995 resentencing, and thus his challenges to his sentence and convictions were timely. *See id.*

On appeal, this Court determined the defendant's claims challenging his convictions were time barred, reasoning that a petitioner who received federal habeas relief on sentencing was not permitted to "revive the claims that expired once the 1981 verdict of guilt became final[,]" because their "'right' to first petition PCRA review [was] necessarily confined to that part of the final Pennsylvania judgment that was disturbed by the federal *habeas* proceedings." *Lesko*, 15 A.3d at 359, 366.

Like the defendant in *Lesko*, Appellant was granted relief only on his original sentence, not the determination of his guilt. This Court affirmed his convictions on direct appeal on January 11, 2022, but remanded for resentencing of an illegal sentence. Appellant was then resentenced on March 31, 2022. Thus, in this PCRA challenge to the guilt phase of proceedings, we

look to the date of this Court's affirmance of the judgment, not his resentencing. We conclude that for PCRA purposes, his judgment of sentence became final on February 10, 2022 — when the 30-day period for seeking allowance of appeal with the Pennsylvania Supreme Court expired. *See* 42 Pa.C.S. § 9545(b)(3) (judgment of sentence becomes final at the conclusion of time for seeking review); Pa.R.A.P. 903(a) ("notice of appeal . . . shall be filed within 30 days after the entry of the order from which the appeal is taken").

Generally, Appellant then had one year, or until February 10, 2023, to file a PCRA petition. *See* 42 Pa.C.S. 9545(b)(1). He filed his present petition on April 6, 2022. As such, Appellant's petition is timely, and we proceed with our review.

We first note:

> Our standard of review from the denial of post-conviction relief is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. This Court will not disturb findings that are supported by the record.

*Commonwealth v. Watley*, 153 A.3d 1034, 1039-40 (Pa. Super. 2016) (citations & quotation marks omitted).

Where a court has dismissed a PCRA petition without an evidentiary hearing, we review the decision for an abuse of discretion:

> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the

- 10 -

responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

***Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa. Super. 2012) (citations omitted).  "[T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." ***Commonwealth v. Johnson***, 139 A.3d 1257, 1273 (Pa. 2016) (citation omitted).

To prevail on an ineffectiveness claim, the petitioner must establish the following factors: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner was prejudiced. ***Charleston***, 94 A.3d at 1020.  Further, the defendant's claims "must meet all three prongs of the test for ineffectiveness[;] if the court can determine without an evidentiary hearing that one of the prongs cannot be met, then no purpose would be advanced by holding an evidentiary hearing." ***Id.*** (citation omitted).  Counsel is presumed to have rendered effective assistance. ***Commonwealth v. Charleston***, 94 A.3d 1012, 1019 (Pa. Super. 2014) (citation omitted).

Regarding the reasonable basis prong of the test,

the PCRA court does not question whether there were other more logical courses of action which counsel could have pursued;

- 11 -

rather, [the court] must examine whether counsel's decisions had any reasonable basis. Where matters of strategy and tactics are concerned, [a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. . . .

*Commonwealth v. Mason*, 130 A.3d 601, 618 (Pa. 2015) (citations & quotation marks omitted).

When determining what is reasonable, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Counsel's judgment must be reviewed from counsel's perspective at the time and should not be second-guessed if it falls within the realm of professional reasonableness. . . .

*Commonwealth v. McClellan*, 887 A.2d 291, 300 (Pa. Super. 2005) (citations omitted).

Appellant challenges the PCRA court's dismissal of his petition without an evidentiary hearing, claiming he established a genuine issue of material fact. *See* Appellant's Brief at 20. We first note that Appellant only challenges the credibility of Mother and Stepmother, not Victim. He states Trial Counsel was ineffective when he failed to cross-examine Mother and Stepmother "with regard to whether they were motivated to fabricate their allegations and persuade [Victim] to lie . . . because they wanted to get out of paying rent." *Id.* at 16. Appellant contends Mother and Stepmother stopped paying rent to him after they contacted the police in May 2017. *Id.* at 17.

To support his argument, Appellant cites two Magisterial Court cases in which Mother and Stepmother's former landlord — Peachtree Associates, LLC

— filed complaints against them.[8]  Appellant's Brief at 17.  One of the cases was filed in 2016 — before the witnesses lived in Appellant's property — and the other in 2018 — after they moved out of Appellant's property.  Appellant states the witnesses also failed to pay their rent to Peachtree Associates for two three-month periods, and at both dockets, judgment was entered in favor of the landlord.  *Id.* at 17.  Appellant maintains that Trial Counsel should have cross-examined both witnesses about these complaints because they "constituted evidence of a prior bad act akin [to] theft, which [amounts to] crimen falsi."  *Id.* at 18.  He avers that this evidence "show[ed] a possible motive . . . to fabricate" the allegations in an attempt to stop paying him rent and Trial Counsel had no reasonable basis for this omission.  *Id.* at 18-19.  Appellant argues Trial Counsel's actions prejudiced him because the jury's decision rested on Victim's credibility, which was bolstered by the testimony of Mother and Stepmother.  *Id.* at 19.

The PCRA court concluded it did not abuse its discretion when it denied Appellant's PCRA petition without an evidentiary hearing.  PCRA Ct. Op., 4/12/23, at 3.  It determined Trial Counsel "pursu[ed] a different but reasonable trial strategy" when cross-examining Mother and Stepmother about the deterioration of their relationship with Appellant before they lodged a complaint with the police.  *Id.* at 4.  Specifically, it opined:

---

[8] ***Peachtree Associates, LLC v. Wood***, MJ-05247-LT-0000157-2016; ***Peachtree Associates, LLC v. Wood***, MJ-05247-LT-0000187-2018.

[C]ontrary to [Appellant's] allegations, [T]rial [C]ounsel extensively cross-examined both [Mother] and [Stepmother] as to discredit their testimony and show that their allegations against him came after their relationship broke down, as well as, the dissolution of [Appellant's] relationship with [Fillipino,] who was also a friend of [Mother]. Further, there appears to be no evidence that [Mother] and [Stepmother] failed to pay rent to [Appellant], thus their landlord tenant disputes at other rental locations is of little probative value and not relevant.

Additionally, there does not appear to be a course of conduct from [Mother, Stepmother, and/or Victim] in making false sexual allegations against their landlords to avoid paying rent. [Appellant's] mere allegation that [Mother] and [Stepmother] fabricated the allegations against him to avoid paying rent does not substantiate his claims nor does it make [Trial C]ounsel ineffective for electing a reasonable cross-examination to show that [Mother] and [Stepmother] fabricated the stories due to a dissolution of the parties['] relationship.

*Id.* at 3-4 (paragraph break added).

We agree with the PCRA court's conclusions. Trial Counsel pursued a reasonable strategy at trial — that Mother and Stepmother falsified allegations against Appellant only after their relationship with him deteriorated. By questioning both witnesses as to the timeline of their relationship with Appellant, Appellant's romantic relationship with Fillipino — a former family friend — and when they contacted the police, Trial Counsel called into question their credibility and potential bias. Trial Counsel elicited testimony that Mother and Stepmother made these allegations only after their relationship with Appellant soured. The jury was free to believe all, part, or none of the evidence presented at trial and pass upon the weight of each witness' testimony. *See Commonwealth v. Jacoby*, 170 A.3d 1065, 1078 (Pa. 2017). We note the jury found Appellant not guilty of four out of the six

charges — including one of the counts of indecent assault. While Trial Counsel's chosen strategy did not result in acquittal of all charges, we do not disturb the PCRA court's denial of relief on this ineffectiveness claim that Counsel should have also pursued an additional theory of the witnesses' alleged bias. *See Mason*, 130 A.3d at 618. Appellant has failed to demonstrate that his alternative theory, that the witnesses were motivated to fabricate the allegations so they did not have to pay him rent, would have been more successful than Trial Counsel's chosen strategy.

Further, Trial Counsel's strategy was reasonable, especially considering Appellant presented no evidence at trial — and still has not averred — that Mother and Stepmother in fact owed him outstanding rent at the time they moved.[9] *See* N.T. Jury Trial at 209. In fact, Stepmother testified that she and Mother paid all rent owed to Appellant and there was no remaining balance. *See id.* While Appellant insists the witnesses raised the underlying allegations in an attempt to avoid paying him rent, he has provided no evidence that they in fact failed to pay him. The judgments against the witnesses in favor of other unrelated property owners do not support his

---

[9] In his brief, Appellant states: "According to [Stepmother], they kept up their rent payments — at least until they contacted the police in early May of 2017, and [Appellant's] arrest in early June of 2017, about six months after they moved in." Appellant's Brief at 17-18 *citing* N.T. Jury Trial at 209. However, upon our review of the record, the notes of testimony reveal Stepmother merely asserted she and Mother "did not have the funds to move" out of the home, but their rent **was** paid and current. *See* N.T. Jury Trial at 209. Appellant provided no support for his contention that the witnesses did not pay their rent.

assertion. Thus, Trial Counsel's chosen strategy to attack the credibility of the witnesses had a reasonable basis, and no relief is due. *See Mason*, 130 A.3d at 618; *McClellan*, 887 A.2d at 300.

Appellant failed to establish that Trial Counsel lacked a reasonable basis for his line of questioning at trial, and as such, he failed to demonstrate the PCRA court abused its discretion when it dismissed his petition without an evidentiary hearing. *See Johnson*, 139 A.3d at 1273; *Charleston*, 94 A.3d at 1020.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/18/2023