COMMONWEALTH of Pennsylvania, Appellee

v.

Alexandra K. McCLELLAN, Appellant.

Superior Court of Pennsylvania.

Submitted June 20, 2005

Filed Nov. 7, 2005.

---

9. Based on our disposition, we need not reach Mother's second issue.

Frank S. Miceli, Lock Haven, for appellant.

Jonellle H. Eshbach, Asst. Dist. Atty., Harrisburg, for the Com., appellee.

Before: MUSMANNO, KELLY, JJ., and McEWEN, P.J.E.

KELLY, J.:

¶ 1 Appellant, Alexandra K. McClellan, asks us to review the order entered in the Clinton County Court of Common Pleas, denying her petition for relief under the Post Conviction Relief Act ("PCRA")[1] for failure to raise a cognizable claim. Specifically, Appellant asks us to determine whether her claims of ineffectiveness of counsel are cognizable under the PCRA, where she claims: (1) trial counsel intentionally violated the Pennsylvania Rules of Criminal Procedure, which resulted in the preclusion of expert witness testimony favorable to Appellant; (2) trial counsel's strategy to surprise the Commonwealth with the expert witness' testimony had no reasonable basis when trial counsel knew or had reason to believe the trial court would preclude the testimony as a sanction for the late disclosure; and (3) Appellant was prejudiced by the preclusion of the testimony, which would have demonstrated that she could not have been at the scene of the crime at the time the victim's injuries occurred. We hold Appellant's claims are cognizable under the PCRA. Specifically, we hold trial counsel's failure to provide, in a timely manner, the identity and opinion of an expert witness who tended to prove the defendant's alibi cannot be considered reasonable under the totality of the circumstances. Thus, trial counsel's failure to comply with the Pennsylvania Rules of Criminal Procedure is not an effective trial strategy, nor is it an example of effective assistance of counsel under

the prevailing norms of practice as reflected by the American Bar Association. Accordingly, we reverse the order denying Appellant's PCRA petition and remand for a new trial.

¶ 2 The relevant facts and procedural history of this appeal are as follows. Appellant had been involved romantically with her co-defendant, Matthew Weigle, since November of 1995. On the night of February 3, 1996, Appellant and Weigle attended a party forty minutes from Appellant's home, while Esther Walters, an acquaintance and occasional babysitter, stayed with Appellant's eleven-month-old son ("Child"). At approximately 2:00 a.m. on February 4, 1996, Appellant and Weigle returned to Appellant's residence. Weigle drove Appellant's car because Appellant was intoxicated. Upon their return, Appellant went upstairs to Child's bedroom and was the only adult on the second floor for several minutes. Appellant, who did not testify at trial, later told police Child was sleeping and breathing normally at that time. Appellant then left the residence with her friend, Leslie Lomison, to drive Walters and her granddaughter home. After dropping off Walters and her granddaughter, Appellant and Lomison stopped at a nearby convenience store to purchase food. The convenience store's surveillance video revealed they left the store at 2:22 a.m., and an investigation revealed she likely arrived home approximately three minutes later. Appellant immediately brought the food inside the house while Lomison remained outside to talk with a friend. After Appellant placed the food down and hung up her coat, she immediately went upstairs to Child's bedroom. She and Weigle were together in Child's bedroom for approximately twelve

1. 42 Pa.C.S.A. §§ 9541–9546.

minutes until Lomison entered the residence. Lomison went upstairs and found Weigle standing outside Child's bedroom and Appellant holding Child in his room. Lomison looked at Child and heard Appellant say there was something wrong with Child. Lomison immediately went to Appellant's bedroom and called 911 at 2:40 a.m.

¶ 3 Upon arrival, paramedics discovered Child died from extensive, recently-inflicted injuries. An autopsy revealed Child suffered a one-and-one-half-inch skull fracture with hemorrhaging of the brain, eight fractured ribs and sixty-six separate bruises, including bruises to the heart, lungs, and liver. Medical testimony at trial indicated these injuries were inflicted by compression, strangulation, suffocation, and blunt force trauma to the head.

¶ 4 Appellant and Weigle were charged with first-degree and third-degree murder, as well as conspiracy to commit first-degree and third-degree murder. Appellant was represented by criminal defense attorneys Craig P. Miller and George E. Lepley during pre-trial, trial, and direct appeal proceedings. From the initial phase of the defense, counsel were concerned about the timing of the physical assaults on Child because of the surveillance tape which placed Appellant away from the home near the time his injuries occurred. From the start of their representation, counsel discussed the need to secure an expert witness in forensic pathology to understand the scientific principles involved and to explain those principles to the jury. The scientific principles involved how certain cells, particularly neutrophils, in the body respond to different types of injury. Neutrophils respond to an injury in an effort to help begin the healing process. Forensic pathologist Dr. Wayne Ross, the expert witness for the Commonwealth, later testified neutrophils would respond to the site

of a severe injury as quickly as one minute from the infliction of injury.

¶ 5 Initially, defense counsel retained the services of Dr. Cyril Wecht, but Dr. Wecht was recalcitrant. This Court described the events as follows:

[Counsel] agreed to provide the Commonwealth the identity of [the] expert, Dr. Wecht, as well as his report. After [counsel] received the report, it was not provided to the Commonwealth despite the fact that it had been specifically requested. [Counsel] refused the request, arguing that the report was work product and, therefore, was privileged. On September 11, 1998, [counsel] agreed to allow the Commonwealth to speak with Dr. Wecht about the substance of his testimony. However, Dr. Wecht refused to speak with the Commonwealth, precipitating the Commonwealth's filing of a Motion in Limine requesting Dr. Wecht's complete expert report or, in lieu thereof, that the trial court preclude Dr. Wecht from testifying at trial pursuant to Pa.R.Crim.P. 305(E). Following conference calls among counsel and the trial court, the court directed that Dr. Wecht's expert report be provided to the Commonwealth immediately, but [counsel] refused.

On December 18, 1998, the trial court entered an order requiring that [counsel] file Dr. Wecht's expert report on or before January 11, 1999, and, in default thereof, the court reserved the right to impose sanctions. No report was filed by January 11, 1999, and only an "addendum" containing three pages was faxed to the Commonwealth. On February 12, 1999, the trial court, in conformity with its prior order, ordered that Dr. Wecht submit to a deposition by the District Attorney of Clinton County. The trial court further ordered that if Dr. Wecht failed to submit to the deposi-

tion, then his testimony at trial would be limited to that which was contained in the addendum that had been provided to the Commonwealth.

Dr. Wecht appeared for deposition on February 20, 1999, but before it was completed, announced he was leaving and did so. During the deposition, he referred to his report of July 21, 1998, which had never been produced to the Commonwealth. As a result, on February 22, 1999, the trial court entered an order directing [counsel] to produce the report and further directing that Dr. Wecht had to complete the deposition on February 27, 1999 or be held in contempt. The report was produced and the deposition completed on February 27, 1999.

We [found] the trial court acted well within its discretion in ordering that [counsel] make Dr. Wecht available for deposition. [Counsel] completely disregarded several court orders in failing to make Dr. Wecht's expert report available to the Commonwealth.

*Commonwealth v. McClellan*, No. 9 MDA 2000, unpublished memorandum at 14–15 (Pa.Super. filed August 2, 2001). On February 11, 1999, prior to Dr. Wecht's deposition, Appellant's trial counsel forwarded documents to Dr. Michael Baden, a forensic pathologist from New York. Trial counsel also met with Dr. Baden on March 7, 1999, at which time he stated his initial findings that Appellant was not at home when Child's injuries occurred. Trial counsel did not inform the court, the Commonwealth, or co-defendant Weigle of Dr. Baden's identity.

¶ 6 Jury selection began on March 1, 1999, and two weeks of pre-trial motions followed. During trial, Dr. Ross testified Child's skull fracture occurred within as few as five minutes of death. Dr. Ross also opined the bruise on the skin immedi-

ately covering the skull fracture was so fresh that there were no neutrophils at the site, indicating the injury occurred within minutes of death. Dr. Ross testified Child died from multiple traumatic injuries, including the skull fracture, brain injury, strangulation, suffocation, severe chest compression resulting in rib fractures, and bruising to the liver, lungs, and heart. Dr. Ross' testimony established the time of Child's injuries as coinciding with when Appellant would have been at home, rather than when Appellant was at the convenience store ·or on the way to her home.

¶ 7 On April 6, 1999, just days before the verdicts were entered, Dr. Baden faxed a letter to Attorney Miller regarding Dr. Ross' testimony. Dr. Baden indicated that, in his opinion, Child died of multiple blunt force injuries sustained in a period of time when Appellant was clearly àway from home. Defense counsel attempted to have Dr. Baden testify to his findings, but this Court described the late disclosure as follows:

The trial began on March 1, 1999. Not until April 6, 1999 did Appellant's counsel first mention his intention that Dr. Baden would testify on Appellant's behalf. During the course of all pretrial discovery over more than two years, Dr. Baden's name had never been mentioned, provided through informal discovery or listed in any pretrial statement. At the time defense counsel indicated his intention that Dr. Baden would testify the following day, no expert report had been produced. Defense counsel conceded that he had known of Dr. Baden's existence and the possibility that he might be an expert witness for the defense for one month prior to April 6, 1999. We find that Appellant's failure to disclose Dr. Baden's identity until the last day of a six-week trial falls under no exception

to Rule 305 and the trial court exercised appropriate discretion under Rule 305(E) by prohibiting his testimony. *Id.* at 26–27. Thus, on April 7, 1999, the trial court ordered Dr. Baden's statements become part of the record, but refused to submit them to the jury for consideration or to allow either party to refer to them because the evidence was brought in an untimely manner. Subsequently,

> guilty verdicts as to the third-degree murder and conspiracy to commit third-degree murder were entered against Appellant and Weigle on April 10, 1999. Following the trial court's denial of Appellant's post-trial motions, the judgment of sentence was entered on June 7, 1999. Appellant's post-sentence motions were denied by the trial court by order entered October 15, 1999 and Appellant timely appealed. On November 17, 1999, the trial court directed Appellant to file a Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P.1925(b). Appellant timely filed an Amended Statement on December 1, 1999, and [the trial court] filed an Opinion pursuant thereto on November 17, 2000.

*Id.* at 7–8.

¶ 8 Appellant appealed to this Court in February of 2001, raising fifteen issues for our review. In an unpublished memorandum opinion, filed August 2, 2001, we affirmed Appellant's judgment of sentence. On October 4, 2001, Appellant's request for re-argument or reconsideration was denied. On June 10, 2002, the Supreme Court of Pennsylvania denied Appellant's petition for allowance of appeal. On August 2, 2002, Appellant's application for reconsideration of the petition for allowance of appeal was denied. On July 29, 2003, Appellant filed a petition for relief, which the PCRA court treated as a timely first PCRA petition. On August 26, 2003,

the PCRA court ordered an amended PCRA petition to be filed within sixty days. On October 24, 2003, Appellant, represented by new counsel, filed an amended PCRA petition.

¶ 9 On April 26, 2004, the PCRA court conducted a hearing. At the hearing, Appellant's trial counsel, Attorney Miller, testified there was no reason why he withheld Dr. Baden's identity and opinions prior to April 6, 1999. (N.T. PCRA Hearing, 4/26/04, at 41). However, when asked whether he thought the Commonwealth would have been adequately prepared for Dr. Baden had he been permitted to testify, Attorney Miller averred the Commonwealth would have been as prepared for Dr. Baden as it would have been for the defense's previous expert, Dr. Wecht. Attorney Miller contended his decision not to disclose the witness was fair because the Commonwealth was "thoroughly, thoroughly ready for Dr. Wecht." (*Id.* at 69). Attorney Miller opined that, had the Commonwealth not been adequately prepared, it could have requested a continuance. Attorney Miller stated he did not expect the trial court to preclude him from calling Dr. Baden: "I didn't believe, and I'm absolutely wrong, I didn't believe that we were bound to give that information to the District Attorney prior to Dr. Baden testifying. I was wrong." (*Id.* at 70). When asked whether he thought it was prejudicial to the defense theory when Dr. Baden was not permitted to testify, Attorney Miller answered, "Absolutely." (*Id.* at 43–44). Attorney Miller further stated he knew Dr. Baden's testimony was of extreme importance, especially after the Commonwealth's expert witness testified.

¶ 10 Later at the hearing, Appellant's mother testified to the following:

> We were at the house in Montrose and making arrangements for Dr. Baden to come to trial. And it was close to the

Easter holiday. And the attorneys were going to get Dr. Baden to come. And it was the holiday. And they said that the District Attorney would probably be at his camp, and they wouldn't be able to get ahold of him. So they would have to wait until we went back to trial after the holiday to surprise him with this expert witness they were going to have.

(*Id.* at 86). The PCRA court determined counsel's decision was reasonable trial strategy because the Commonwealth would have been surprised by this witness and would not have had adequate time to prepare for cross-examination. The court concluded the failure of counsel's strategy did not preclude a finding that their actions were reasonable. The PCRA court also determined, "[E]ven if trial counsel had disclosed the identity and opinions of Dr. Baden in a timely manner and the Court had permitted Dr. Baden to testify at trial, it is purely speculative as to what effect it could have had on the outcome of the trial." (PCRA Court Opinion, filed December 22, 2004, at 4). On December 17, 2004, the PCRA court issued an order and opinion denying Appellant's petition for relief. This timely appeal followed.

¶ 11 Appellant raises the following issues for our review:

WHETHER THE PCRA COURT ERRED IN CONCLUDING THAT [APPELLANT'S TRIAL] COUNSELS' [SIC] INTENTIONAL VIOLATION OF A RULE OF CRIMINAL PROCEDURE SHOULD BE CONSIDERED A REASONABLE TRIAL STRATEGY AND EFFECTIVE ASSISTANCE OF COUNSEL WHEN THE VIOLATION RESULTS IN THE PRECLUSION OF EVIDENCE FAVORABLE TO [APPELLANT]?

WHETHER THE PCRA COURT ERRED IN CONCLUDING THAT [APPELLANT'S TRIAL] COUNSEL'S STRATEGY TO SURPRISE THE DISTRICT ATTORNEY WITH THE TESTIMONY OF AN EXPERT WITNESS HAD A REASONABLE BASIS WHEN THE TRIAL COURT HAD ALREADY ISSUED NUMEROUS ORDERS REGARDING THE DEFENSE DISCLOSURE OF EXPERT WITNESSES AND THEIR OPINIONS AND [TRIAL] COUNSEL SHOULD HAVE KNOWN OR HAD REASON TO BELIEVE THAT THE TRIAL COURT WOULD PRECLUDE THE TESTIMONY HIGHLY FAVORABLE TO [APPELLANT] AS A SANCTION FOR THE LATE DISCLOSURE UNDER THE CIRCUMSTANCES PRESENTED?

WHETHER THE PCRA COURT ERRED IN CONCLUDING THAT [APPELLANT] WAS NOT PREJUDICED BY THE PRECLUSION OF FAVORABLE EXPERT TESTIMONY AS A SANCTION FOR COUNSELS' [SIC] VIOLATION OF A RULE OF CRIMINAL PROCEDURE WHEN THE EXPERT TESTIMONY INVOLVED SCIENTIFIC PRINCIPLES BEYOND THE KNOWLEDGE OF LAYPERSONS AND WOULD HAVE DEMONSTRATED TO THE JURY THAT THE VICTIM'S INJURIES OCCURRED BEFORE [APPELLANT] ARRIVED ON THE SCENE?

(Appellant's Brief at 1).

 ¶ 12 Together, Appellant's issues raise a claim of ineffective assistance of counsel.[2] "Our review of a post-conviction

---

**2.** Initially, we note Appellant's PCRA petition was timely. Appellant filed her petition on July 29, 2003, which was within one year of her judgment becoming final on October 31, 2002. *See* 42 Pa.C.S.A. § 9545(b) (requiring appellants to file PCRA petitions within one year of final judgment); U.S. S.Ct. Rule 13, 28 U.S.C.A. (requiring appellants to file peti-

court's grant or denial of relief is limited to determining whether the court's findings are supported by the record and the court's order is otherwise free of legal error." *Commonwealth v. Yager,* 454 Pa.Super. 428, 685 A.2d 1000, 1003 (1996) (*en banc*), *appeal denied,* 549 Pa. 716, 701 A.2d 577 (1997). *See also Commonwealth v. Wilson,* 824 A.2d 331, 333 (Pa.Super.2003). We grant great deference to the findings of the PCRA court and will not disturb findings that are supported by the record. *Yager, supra; Wilson, supra.*

¶ 13 An appellant must present ineffective assistance of trial counsel claims at his first opportunity on collateral review. *See Commonwealth v. Grant,* 572 Pa. 48, 67, 813 A.2d 726, 738 (2002) (stating ineffectiveness claims are waived if petitioner had opportunity to raise claim on collateral review and failed to do so).

> To prevail on a claim alleging counsel's ineffectiveness under the PCRA, [an a]ppellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without any reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness; i.e., there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different.

*Commonwealth v. Rivera,* 816 A.2d 282, 288 (Pa.Super.2003). The PCRA does not impose a more onerous burden on an appellant alleging ineffective assistance of counsel than that required on direct appeal. *Commonwealth v. Kimball,* 555 Pa. 299, 310, 724 A.2d 326, 332 (1999). Under the PCRA, a petitioner must plead and prove by a preponderance of the evidence "ineffectiveness of counsel which, in the

circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa. C.S.A. § 9543(a)(2)(ii).

¶ 14 Appellant raised her ineffective assistance of trial counsel claim in her first PCRA petition, representing her first opportunity to do so. Therefore, we proceed to address the merits of her claim. *See Grant, supra.* We may quickly address the first prong of the ineffectiveness standard by quoting the PCRA court: "Had [Appellant] disclosed the identity and opinions of Dr. Baden in a timely manner, the trial court would have permitted his testimony.... Therefore, the underlying claim ... is of arguable merit." (PCRA Court Opinion, at 3). Accordingly, the first prong is satisfied. *See Rivera, supra.*

¶ 15 Appellant's first two issues address whether there was any reasonable basis for trial counsel's strategy. Appellant argues her trial counsel intentionally failed to comply with the Rules of Criminal Procedure. Appellant asserts intentional violations of the Rules of Criminal Procedure cannot be considered reasonable trial strategy. Appellant avers trial counsel failed to render reasonable assistance under the prevailing norms of practice as recognized by the American Bar Association. Appellant further contends trial counsel should have known the trial court would preclude Dr. Baden's testimony based on previous events involving Dr. Wecht, and counsel's repeated violations of court orders did not reasonably advance her interests at trial. Appellant concludes her trial counsel's conduct had no reasonable basis designed to effectuate her interest. We agree.

tions for writ of certiorari within ninety days of entry of order by Pennsylvania Supreme

Court denying discretionary review).

■ ¶ 16 Rule 305 of the Pennsylvania Rules of Criminal Procedure provides in pertinent part: [3]

**(C) Disclosure by the Defendant**

(1) *Mandatory:*

(a) Notice of Alibi Defense. A defendant who intends to offer the defense of alibi at trial shall, at the time required for filing the omnibus pretrial motion under Rule 306, file of record notice signed by the defendant or the attorney for the defendant, with proof of service upon the attorney for the Commonwealth, specifying intention to claim such defense. Such notice shall contain specific information as to the place or places where the defendant claims to have been at the time of the alleged offense and the names and addresses of witnesses whom the defendant intends to call in support of such claim.

\* \* \*

(d) Failure to File Notice: If the defendant fails to file and serve notice of alibi defense ... as required by this rule, or omits any witness from such notice, the court at trial may exclude the testimony of any omitted witness, or may exclude entirely any evidence offered by the defendant for the purpose of proving the defense, except testimony by the defendant, or may grant a continuance to enable the Commonwealth to investigate such evidence, or may make such other order as the interests of justice require.

\* \* \*

**(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances. When a discovery violation occurs, the court has very broad discretion in choosing an appropriate remedy.

Pa.R.Crim.P. 305 (2000).

■ ¶ 17 A convicted defendant claiming ineffective assistance of counsel must identify acts or omissions made by counsel that cannot be considered the result of reasonable professional judgment. *See Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674, 695 (1984); *see also Commonwealth v. Durah–El,* 344 Pa.Super. 511, 496 A.2d 1222, 1225 (1985) (quoting *Strickland, supra*). "Prevailing norms of practice as reflected in the American Bar Association [("ABA")] standards and the like, e.g., ABA Standards for Criminal Justice [("ABA Standards")] 4–1.1 to 4–8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable." *Strickland, supra* at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* Repeated disregard of the trial court's rulings is not a reasonable basis designed to effectuate the appellant's interests. *Commonwealth v. Carson,* 559 Pa. 460, 483, 741 A.2d 686, 699 (1999), *cert. denied,* 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000), *abrogated on other grounds, Commonwealth v. Freeman,* 573 Pa. 532, 827 A.2d 385 (2003).

¶ 18 According to the ABA Standards, "defense counsel, in common with all members of the bar, is subject to standards of

---

**3.** Rule 305 has since been renumbered Rule 573. Because the Rule 305 enumeration was in effect at the times pertinent to this appeal, we will refer to the applicable rule as Rule 305.

conduct stated in statutes, rules, decisions of courts, and codes, canons, or other standards of professional conduct." ABA Standard 4–1.2(e). Defense counsel should act with reasonable diligence and promptness in representing a client and avoid unnecessary delay in the disposition of cases. ABA Standard 4–1.3(a), (b). Defense counsel should be punctual in the submission of all motions, briefs, and other papers. *Id.* at 4–1.3(b). Defense counsel should not discourage or obstruct communication between prospective witnesses and the prosecutor. ABA Standard 4–4.3(d). It is unprofessional conduct to advise any person other than a client, or cause such person to be advised, to decline to give to the prosecutor or defense counsel for co-defendants information which such person has a right to give. *Id.*

■ ¶ 19 Rule 3.2 of the Rules of Professional Conduct states, "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Pa.R.P.C. 3.2. As noted in the comment thereto, "Delay should not be indulged merely for the convenience of the advocates, or for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose." Pa.R.P.C. 3.2 Comment. Similarly, the comment to Rule 3.4 recognizes "fair competition in the adversary system is secured by prohibitions against ... obstructive tactics in discovery," and "subject to evidentiary privileges, the right of an opposing party, including the government, to obtain evidence through discovery or subpoena is an important procedural right." Pa.R.P.C. 3.4 Comment.

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent

that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland, supra* at 690–91, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. When determining what is reasonable, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland, supra* at 690, 104 S.Ct at 2066, 80 L.Ed.2d at 695. "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of a proceeding." *Id.* at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 696. Counsel's judgment must be reviewed from counsel's perspective at the time and should not be second-guessed if it falls within the realm of professional reasonableness. *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. If an attorney fails to inform his client of the relevant law, this failure will be considered unreasonable. *Hill v. Lockhart,* 474 U.S. 52, 62, 106 S.Ct. 366, 372, 88 L.Ed.2d 203, 212 (citing *Strickland, supra* at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695).

¶ 20 Instantly, there is no dispute the strategy employed by Appellant's trial counsel was designed to effectuate Appellant's interest. Therefore, we must determine if trial counsel's conduct had any reasonable basis, considering the totality of the circumstances. *See Strickland, supra.* Our review of the totality of the circumstances reveals counsel were or

should have been aware the trial court required disclosure of their experts' opinions and reports, based in particular on their previous experience with Dr. Wecht. On several occasions, the trial court ordered counsel to disclose Dr. Wecht's report. The trial court's unwillingness to tolerate further failures by counsel to disclose expert information was clear when the court ordered counsel to disclose Dr. Wecht's reports, ordered Dr. Wecht to submit to depositions by the Commonwealth, and reserved the right to impose sanctions on Dr. Wecht. At that point, counsel should have been aware of the trial court's intent to enforce Rule 305 of the Pennsylvania Rules of Criminal Procedure. *See generally* Pa.R.Crim.P. 305. Therefore, we cannot conclude counsel's justification that the Commonwealth "could have gotten a continuance if [it] wanted a continuance," was reasonable, nor does it reasonably support the decision not to disclose Dr. Baden to the Commonwealth. (*See* N.T. PCRA Hearing, at 70). A review of the Rules of Criminal Procedure should have revealed to counsel the likelihood Dr. Baden would not be permitted to testify, particularly in light of counsel's previous defiance of the court's orders. *See* Pa.R.Crim.P. 305(E); *Strickland, supra.* Instead, counsel's actions exhibited either a lack of knowledge of the Rules of Criminal Procedure, constituting incomplete investigation into the law, or a deliberate attempt to frustrate the Commonwealth's right to learn of the witness, constituting a violation of both the Rules of Professional Conduct and the ABA Standards. *See Strickland, supra* (stating standard for investigation of law); Pa. R.P.C. 3.4 (stating standard for disclosing witnesses to Commonwealth); *see also* Pa.

R.P.C. 3.2 Comment; ABA Standard 4–4.3(d). Under either view, we do not consider counsel's strategy and repeated failure to comply with the trial court's orders or the Pennsylvania Rules of Criminal Procedure to be reasonable in light of the possible redresses available to the trial court. *See Strickland, supra; see also Carson, supra* (noting trial counsel's actions are unreasonable when they repeatedly violate court orders).[4]

¶ 21 Moreover, counsel's conduct was unreasonable according to several standards set by the ABA. Even if counsel accurately assessed that the trial court could have granted a continuance, their actions still would have violated the ABA's standard of avoiding "unnecessary delay in the disposition of cases." *See* ABA Standard 4–1.3(b). Counsel were not punctual in submitting Dr. Baden's name or expert report. *See id.* Counsel may have obstructed communication between a prospective witness and the Commonwealth. *See* ABA Standard 4–4.3. Finally, counsel failed to demonstrate "a reasonably diligent effort" to comply with discovery requests and orders. *See* ABA Standard 4–4.5. Based on the foregoing, we conclude trial counsel's course of conduct was without any reasonable basis designed to effectuate Appellant's interests.

¶ 22 Next, we address whether Appellant proved she was prejudiced by counsel's conduct. If counsel makes an error in a criminal proceeding, even a professionally unreasonable error does not warrant setting aside the judgment if the error had no ·effect on the judgment. *Strickland, supra* at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 696. "The right to effective

---

**4.** Furthermore, we note the PCRA court determined trial counsel intentionally withheld Dr. Baden's identity. (*See* PCRA Court Opinion, at 3–4). The PCRA court's findings are supported by counsel's and Appellant's mother's testimonies. (*See* N.T. PCRA Hearing, at 70, 86).

assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657, 667 (1984).

¶ 23 The PCRA court's statement, and the Commonwealth's agreement, that "it is purely speculative as to what effect [Dr. Baden's testimony] could have had on the *outcome of the trial,*" reflects why Dr. Baden's testimony creates the reasonable probability of a different outcome. (*See* PCRA Court Opinion, at 4); *Rivera, supra;* (*see also* Commonwealth's Brief at 15). If Dr. Baden's testimony would have proven contradictory to Dr. Ross' testimony, Dr. Baden would have created a new issue of credibility for the jury to consider. The PCRA court averred, "[T]he jury may or may not have believed Dr. Baden's testimony over the Commonwealth's expert, Dr. Ross." (PCRA Court Opinion, at 4). Although the PCRA court cited other facts, such as examples of Appellant's neglect in caring for Child and Appellant's behavior with co-defendant Weigle after Child's death, we cannot conclude that, had the jury believed Dr. Baden's testimony over Dr. Ross', the outcome would undoubtedly have been the same.

¶ 24 Our examination of the record and Attorney Miller's testimony reveals Dr. Baden's testimony and report would have demonstrated Child died of multiple blunt force injuries incurred while Appellant was away, as supported by the store videotape and the time of Child's death. Dr. Baden would have established that responding neutrophils are not seen in an area of bruising or injury less than fifteen minutes after occurrences, no matter where the injury occurs. His testimony would have further indicated the textbooks upon which Dr. Ross relied state an opposite theory from that which Dr. Ross advocated. Fi-

nally, based on his review of the extent of the postmortem drop in the baby's temperature and the presence of settled blood, Dr. Baden would independently confirm Child suffered his injuries before Appellant returned home. This information reveals Dr. Baden's testimony was of crucial importance to Appellant, and the jury would have had an opportunity to consider whether Appellant could have been present at the time Child's injuries were inflicted. Even if the jury accepted the Commonwealth's evidence regarding Appellant's behavior before and after Child's death, such evidence would not overcome an effective alibi defense if the jury chose to believe Dr. Baden's testimony. We determine there is a reasonable probability that, but for the omission of Dr. Baden's testimony and report, the outcome of the proceeding would have been different. Accordingly, because trial counsel caused the preclusion of Dr. Baden's testimony from the jury's consideration, we conclude Appellant was prejudiced by counsel's actions.

■■■ ¶ 25 For the foregoing reasons, we hold that a PCRA petition raises a cognizable claim of ineffective assistance of counsel when it demonstrates trial counsel deliberately failed to disclose to the Commonwealth an expert witness, who would have established an alibi defense for the appellant and contradicted the Commonwealth's expert witness, and trial counsel caused the exclusion of the expert witness' testimony. Reasonable trial strategy does not include the failure to follow a court's order to disclose expert witnesses, either as strategy to frustrate the Commonwealth, or as a failure to interpret properly the Pennsylvania Rules of Criminal Procedure. Furthermore, we hold a defense expert witness establishes a reasonable probability of a different verdict if his testimony may contradict the testimony of

the Commonwealth's expert and establish a probability the petitioner could not be present when the crime was committed, thus satisfying the prejudice prong of ineffective assistance of counsel claims. We therefore reverse the order of the PCRA court denying Appellant relief and remand for a new trial.

¶ 26 Order reversed. Case remanded for new trial. Jurisdiction relinquished.