J-S39044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAKOTA AUSTIN COLE | : | |
| | : | |
| Appellant | : | No. 1560 MDA 2022 |

Appeal from the PCRA Order Entered October 21, 2022
In the Court of Common Pleas of Union County Criminal Division at
No(s):  CP-60-CR-0000160-2019

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:　　　　　**FILED: DECEMBER 29, 2023**

Dakota Austin Cole (Appellant) appeals from the order entered in the Union County Court of Common Pleas dismissing his petition filed under the Post Conviction Relief Act (PCRA),[1] which sought relief from his jury convictions of involuntary deviate sexual intercourse (IDSI) - threat of forcible compulsion, indecent assault - forcible compulsion, indecent assault - threat of forcible compulsion, terroristic threats, unlawful restraint, false imprisonment, simple assault, and recklessly endangering another person[2] (REAP).  On appeal, he argues trial counsel was ineffective on several grounds, including failing to properly impeach the victim or present certain evidence.

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. §§ 3123(a)(2), 3126(a)(2), (3), 2706(a)(1), 2902(a)(1), 2903(a), 2701(a)(3), 2705, respectively.

Appellant's present counsel, K. Michael Sullivan, Esquire, has filed a motion to withdraw, citing **Anders v. California,** 386 U.S. 738 (1967), and **Commonwealth v. McClendon,** 434 A.2d 1185 (Pa. 1981). While we note the proper procedures for withdrawing in a PCRA matter are set forth in **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*), we grant Attorney Sullivan's petition and affirm the PCRA court's order.

The relevant underlying facts of this case are as follows. Appellant was engaged to Katelin Bedosky (Victim). N.T. Jury Trial, 10/27/20, at 24. On April 11, 2019, Victim and Appellant ended their relationship and immediately thereafter, Appellant retrieved a gun from his car, and forced Victim to perform oral sex on him. **Id.** at 25-26, 30. Eventually, Victim was able to call the police, who arrived and arrested Appellant at the scene. **Id.** at 32.

Appellant was charged with rape by forcible compulsion, rape by threat of forcible compulsion, strangulation, IDSI -forcible compulsion, IDSI - threat of forcible compulsion, terroristic threats, unlawful restraint, false imprisonment, simple assault, REAP, indecent assault - forcible compulsion, and indecent assault - threat of forcible compulsion.[3] This matter proceeded to a one-day jury trial on October 27, 2020, where Appellant was represented by Steve Buttorff, Esquire (Trial Counsel).

---

[3] 18 Pa.C.S. §§ 3121(a)(1), 3121(a)(2), 2718(a)(2), 3123(a)(1), respectively.

Relevant to Appellant's claims on appeal, Victim testified to the following details of the incident. On April 11, 2019, she was staying at her mother's home on Reber Road in Mifflinburg, Union County, Pennsylvania. N.T. Jury Trial at 24, 81. Appellant went there that day to see their dog, and during that same visit, they ended their relationship. *Id.* at 24-25. Appellant became upset and Victim was "really worried that he would hurt himself[.]" *Id.* at 25.

Victim went to her bedroom to use the restroom, and when she came out Appellant was in the room. N.T. Jury Trial at 26. Appellant told her he "had something for [her] in his car[,]" and left the house. *Id.* When he returned to Victim's bedroom, she saw "he had a magazine in one hand and his gun in the other[.]" *Id.* Victim testified she was not sure whether the gun was loaded. *Id.* at 28. There were two dogs there and Appellant ushered them out of the room and shut the door. *Id.* at 26. Victim cried and pleaded with Appellant to "not do whatever he was planning on doing." *Id.* at 27. Victim grabbed the magazine out of Appellant's hand and opened the door to throw it out of the room. *See id.* Appellant went to retrieve the magazine and while he was distracted, Victim knocked the gun out of his hand, causing it to fall "behind some boxes." *Id.* at 27-28. Appellant "slammed the door on [Victim's right] hand," "grabbed [Victim] by the neck[,]" and said she "shouldn't have fucking done that." *Id.* at 28.

Appellant retrieved the gun and Victim again grabbed the magazine and threw it out her bedroom window. N.T. Jury Trial at 28. Appellant told Victim "he was going to tie [her] hands behind [her] back [with his belt] so [she]

couldn't call anybody or get away." *See id.* at 29. Victim testified that she complained the belt was hurting her, so Appellant loosened it, but she was not able to free herself. *Id.* Appellant then told Victim he "could do something . . . to make [her] really hate him" and took off his clothes. *Id.* Appellant took off Victim's pants and underwear and threw her phone across the room, where it landed behind her dresser. *Id.* Appellant instructed Victim to get on her knees and "shoved his penis in [her] mouth." *Id.* at 29-30. He then pushed Victim onto the bed where he placed his knees on her shoulders. *Id.* at 30. Victim described that Appellant was "crushing" her. *Id.*

When Appellant got off Victim, he went to retrieve her phone by the dresser. N.T. Jury Trial at 30. Victim grabbed the gun from his hand and ran outside to her car, but realized it was locked and she did not have the keys. *Id.* At this point, Appellant also went outside to get the magazine, and thus Victim ran back inside and locked the door. *Id.* Once inside, she locked herself in her bathroom, but Appellant was able to get back into the home. *Id.* at 31.

Appellant started reading text messages from Victim's phone and screamed at her. N.T. Jury Trial at 31. Victim described that she was "afraid for [her] life" and she put the gun inside a makeup bag and put that bag inside a backpack. *Id.* She then opened the door and "hit [Appellant] with [the] backpack[,] but not hard" because she did not want to further upset him. *Id.* Victim "pried [Appellant's] fingers from [her] phone" and ran upstairs. *Id.* at 32. She returned downstairs to get one of the dogs before going upstairs

again and calling the police. *Id.* Victim initially told the police Appellant did not hurt her, but after a female officer asked her again, Victim told them about the assault. *Id.* at 41.

After the police arrived and arrested Appellant, Victim went to the hospital, where sexual assault nurse examiner (SANE nurse) Hannah McDowell interviewed her and took photos of her injuries. *See* N.T. Jury Trial at 32-33, 103. Victim also testified that she left the belt Appellant used to restrain her "in front of [her] bed just kind of laying on the floor." *Id.* at 33. Pertinent to Appellant's claim on appeal, and as discussed further below, Trial Counsel extensively cross-examined Victim about differences between statements she gave to police and the SANE nurse and her testimony at trial.

The Commonwealth also presented Pennsylvania State Police Corporal Joshua Kendrick, who testified that he spoke with Victim at the hospital. N.T. Jury Trial at 93. The next day, he went to Victim's home, where he recovered the belt, which was "still on the floor[.]" *Id.* at 94-95. He testified he had no reason to think the belt was "adjusted or manipulated in any way" and it was "still in a loop [that was] just big enough for [Victim's] hands to have escaped[.]" *Id.* at 95. Trial Counsel then cross-examined Corporal Kendrick about the statement Victim made to him and his recovery of the belt.

Lastly, the Commonwealth presented the testimony of SANE Nurse McDowell, who examined and interviewed Victim.[4]  N.T. Jury Trial at 103. Nurse McDowell testified she wrote "down exactly what [Victim] sa[id]."  *Id.* at 110.  Relevant to Appellant's argument, Trial Counsel similarly cross-examined Nurse McDowell regarding inconsistencies between Victim's statement and trial testimony.

Appellant testified in his own defense and denied that he assaulted Victim.  N.T. Jury Trial at 144.  He stated that after they ended their relationship, he retrieved his gun from his car to give to Victim, so that he would not harm himself.  *Id.* at 137.  Appellant detailed that after getting the gun, Victim initiated oral sex with him.  *Id.* at 144.  Appellant also stated that he accidentally caused some of her injuries, both dogs were "jumpy," and one "playfully nips" when you interact with him.  *See id.* at 133, 141.  He further explained that after oral sex, Victim allowed him to restrain her with his belt because "[s]he kept grabbing and pulling, and [he] didn't want either one of [them] to get hurt."  *Id.* at 147.  About three to four minutes later, he removed the belt from Victim and threw it on her bed.  *Id.* at 148-49.

At the conclusion of trial, the jury found Appellant guilty of IDSI - threat of forcible compulsion, indecent assault - forcible compulsion, indecent assault - threat of forcible compulsion, terroristic threats, unlawful restraint, false

---

[4] Nurse McDowell was certified as a SANE expert at trial.  N.T. Jury Trial at 103.

imprisonment, simple assault, and REAP, and not guilty of strangulation. The jury could not come to a verdict as to the two counts of rape and one count of IDSI - forcible compulsion, and the trial court declared a mistrial at these charges. Order, 10/29/20.

On January 28, 2021, the trial court sentenced Appellant to an aggregate sentence of 57 to 180 months' incarceration. Appellant filed a post-sentence motion, which the trial court denied on February 9, 2021. Order, 2/9/21.

Appellant did not file a direct appeal, but instead, on January 6, 2022, filed a timely *pro se* PCRA petition. He raised claims of Trial Counsel's ineffective assistance for failing to: (1) "properly impeach" Victim with her prior inconsistent statements; (2) object to the Commonwealth's closing argument because it was "outside the realm[ ] of fairness[;]" and (3) present a defense and expert witness testimony regarding Appellant's mental health.[5] Appellant's *Pro Se* PCRA Petition, 1/6/22, at 3-4.

The PCRA court appointed Michael O'Donnell, Esquire, to represent Appellant. Order, 1/19/22. Attorney O'Donnell did not file an amended petition, but instead on May 2, 2022, filed a motion to withdraw. Attorney O'Donnell explained Appellant wished to raise claims that Trial Counsel's cross-examination of Victim: (1) "did not adequately address concerns with

---

[5] Appellant also checked the box on his *pro se* petition indicating he was raising a constitutional violation. Appellant's *Pro Se* PCRA Petition at 3. However, he does not allege any claims under this argument.

the belt[;]" (2) "did not adequately argue chain of custody" of the belt; and (3) "did not address the inconsistencies" in Victim's statement to the SANE nurse. Attorney O'Donnell's Motion for Leave to Withdraw from Representation, 5/2/22, at 4 (unpaginated). Further, Attorney O'Donnell presented claims on behalf of Appellant: that Trial Counsel was ineffective when he did not call character witnesses, did not know the grading of an offense at sentencing, and failed to play the 911 call recording at trial. **Id.** Attorney O'Donnell stated most of these claims could have been addressed on direct appeal as weight claims. **Id.** at 2, 4, 7. However, Appellant chose not to file a direct appeal because Trial Counsel "advised him he could ultimately be retried [on the counts on which the jury could not agree] and face a more severe sentence." **See id.** at 2. Attorney O'Donnell then concluded all of Appellant's claims were either waived or meritless. **See id.** at 7.

On May 6, 2022, the PCRA court filed a Pa.R.Crim.P. 907 notice of dismissal. On May 18th,[6] Appellant responded with a *pro se* motion requesting leave to amend his PCRA petition. On July 22nd, the PCRA court granted Appellant's motion, and stayed Attorney O'Donnell's petition to withdraw. Order, 7/22/22. However, Appellant did not file an amended petition and on

---

[6] Appellant mailed his motion for leave to amend on May 18, 2022, but the PCRA court did not receive the document until June 15, 2022, after the time for filing a response expired. However, under the prisoner mailbox rule, when a *pro se* defendant is incarcerated, courts "deem a *pro se* document filed on the date it is placed in the hands of prison authorities for mailing." **Commonwealth v. Crawford**, 17 A.3d 1279, 1281 (Pa. Super. 2011).

October 21st, the PCRA court dismissed his petition and granted Attorney O'Donnell's petition to withdraw, but directed Attorney O'Donnell to perfect Appellant's appeal, should he request one. Order, 10/21/22.

On November 7, 2022, Appellant filed a *pro se* notice of appeal. On November 10th, the PCRA court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Even though Attorney O'Donnell had been granted leave to withdraw from representation on December 2nd, he filed a statement of intent to file a **Turner**/**Finley** letter in lieu of a concise statement pursuant to Rule 1925(c)(4).

On April 26, 2023, Appellant filed a *pro se* application for remand to represent himself *pro se*. **See** Appellant's Application for Remand to Lower Court for Appellant To Proceed *Pro Se*, 4/26/23 (unpaginated). In this application, Appellant again asserted Trial Counsel was ineffective for failing to challenge the chain of custody of the belt and not objecting during the Commonwealth's closing. **Id.** at 2. He also raised, for the first time, the following additional claims that Trial Counsel was ineffective for failing to: (1) "request expert instruction[;]" (2) "request false in one false in all jury instruction[;]" and (3) request a jury instruction on inconsistent statements.[7] **Id.**

_____

[7] Appellant asserted in this motion that the PCRA court did not respond to his June 15, 2022, motion for leave to amend his PCRA petition. **See** Appellant's
*(Footnote Continued Next Page)*

- 9 -

On May 9, 2023, this Court remanded the matter to the PCRA court to clarify Appellant's representation status. Order, 5/9/23. On June 15th, after a hearing,[8] the PCRA court again granted Attorney O'Donnell leave to withdraw and appointed present counsel, Attorney Sullivan, to represent Appellant. Order, 6/15/23. On August 2nd, Attorney Sullivan filed an **Anders**[9] brief and on August 4th, filed an **Anders** motion for leave to withdraw from representation.

---

Application for Remand To Lower Court for Appellant to Proceed *Pro Se* at 3. However, as stated above, the PCRA court filed an order granting his motion on July 22nd and sent it to Attorney O'Donnell, who was still counsel of record, as well as Appellant. **See** Order, 7/22/22.

[8] A copy of this hearing transcript was not included in the certified record. This does not impact our review.

[9] **See Anders**, 386 U.S. at 744; **McClendon**, 434 A.2d 1185, 1187. To withdraw from representation during PCRA proceedings, counsel must file a **Turner**/**Finley** petition and conclude all of the petitioner's purported claims are meritless. Alternatively, when petitioning to withdraw from direct appeal representation, counsel must file an **Anders** brief and petition, which argues an appellant has no non-frivolous claims.

Here, Attorney Sullivan's brief relied on **Anders** and its progeny. **See Anders** Brief at 6. However, he has concluded Appellant's claims are both "frivolous" under **Anders**, as well as "meritless," which comports with the correct **Turner**/**Finley** standard for PCRA withdrawals. **See id.** at 6, 18. In any event, we determine Attorney Sullivan substantially complies with the requirements of **Turner**/**Finley**. **See Commonwealth v. Widgins**, 29 A.3d 816, 817 n.2 (Pa. Super. 2011) (stating **Anders** provides higher protections than **Turner**/**Finley**, and thus a brief and petition that complies with **Anders** also complies with the **Turner**/**Finley** standard).

We surmise the following claims from Attorney Sullivan's brief — that Trial Counsel failed to:[10] (1) properly impeach Victim with prior inconsistent statements; (2) object to the chain of custody of the belt used to restrain Victim; (3) object to "prejudicial incendiary comments" in the Commonwealth's closing argument; (4) present a defense and expert witness with respect to Appellant's mental health; (5) call character witnesses at trial; (6) play the 911 call recording at trial; (7) know the grading of one of Appellant's convictions at sentencing; (8) request a "False in one, False in All" jury instruction; and (9) request an expert witness jury instruction. **See Anders** Brief at 11-13.[11]

Preliminarily, we address Attorney Sullivan's motion to withdraw as counsel. In a PCRA matter, an application to withdraw as counsel must comply with the **Turner/Finley** requirements:

> Counsel petitioning to withdraw from PCRA representation must proceed . . . under [**Turner** and **Finley**, and] must review the case zealously. **Turner/Finley** counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

---

[10] Attorney Sullivan did not include a "questions presented" section in his **Anders** brief.

[11] Attorney Sullivan also recognized that Appellant attempted to raise a constitutional claim, but concluded it fell under an ineffectiveness argument. **See Anders** Brief at 11.

> Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.

***Commonwealth v. Doty***, 48 A.3d 451, 454 (Pa. Super. 2012) (citation omitted). If this Court determines counsel has satisfied these technical requirements, we "must then conduct [our] own review of the merits of the case. If [we] agree[ ] with counsel that the claims are without merit, [we] will permit counsel to withdraw and deny relief." ***Id.*** (citation omitted).

Here, Attorney Sullivan has satisfied the above procedural requirements. In his brief, he discusses Appellant's potential claims, the relevant case law and supporting documents, and the reasons why the issues are without merit. Attorney Sullivan has also submitted a motion for leave to withdraw, stating he sent copies of the brief and "an advisory letter" to Appellant. Motion for Leave to Withdraw From Representation, 8/4/23, at 2 (unpaginated); Letter From Attorney Sullivan to Appellant, 8/4/23. Attorney Sullivan attached a copy of the letter, which advised Appellant of his conclusion the appeal would lack arguable merit, and Appellant's right to retain alternative counsel or proceed *pro se*. Appellant has not filed a response to the motion to withdraw or brief. Thus, we proceed to conduct an independent review of the record to determine if the appeal lacks merit. ***See Doty***, 48 A.3d at 454.

Our standard of review under the PCRA is limited to "whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." ***Commonwealth v. Small***, 238

A.3d 1267, 1280 (Pa. 2020). Appellant raises several claims of ineffective assistance of counsel. Attorney Sullivan and the PCRA court both agree that most of Appellant's claims are waived as they should have been raised on direct appeal as challenges to the weight of the evidence. *Anders* Brief at 11; *see* PCRA Ct. Op., 10/21/22, at 3-4. The court then stated that, alternatively, each of the claims are without merit. *See* PCRA Ct. Op. at 4. As Appellant has presented each of his claims under the purview of ineffective assistance of counsel, we will review them as such.

Counsel is presumed to have rendered effective assistance. *Commonwealth v. Urwin*, 219 A.3d 167, 172 (Pa. Super. 2019). To succeed on a claim otherwise, the petitioner must plead and prove:

> his underlying legal claim has arguable merit; counsel's actions lacked any reasonable basis; and counsel's actions prejudiced him. Failure to satisfy any prong of the ineffectiveness test requires dismissal of the claim. . . .

*Id.*

We note that Appellant raises two claims for the first time on appeal — that Trial Counsel failed to: (1) request a "False in one, False in All" jury instruction; and (2) request an expert witness jury instruction.[12] *Anders* Brief at 13. Neither of these claims were presented in Appellant's original *pro se* PCRA petition or Attorney O'Donnell's motion to withdraw, wherein he raised

---

[12] Appellant also raised a claim that Trial Counsel failed to request jury instructions on inconsistent statements. *See* Appellant's Application for Remand to Lower Court For Appellant to Proceed *Pro Se*, at 2. It appears he has abandoned this claim on appeal.

additional claims on Appellant's behalf. Appellant raised these claims for the first time in his application to proceed *pro se*, which he filed after his petition was dismissed. **See** Appellant's Application for Remand to Lower Court For Appellant to Proceed *Pro Se* at 2. We conclude these claims, concerning Trial Counsel's failure to request jury instructions, are waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Next, we address Appellant's purported claims that Trial Counsel did not properly impeach Victim, and did not properly cross-examine Victim or other witnesses about the chain of custody and "preservation" of the belt. **See** ***Anders*** Brief at 12. In the ***Anders*** Brief, Attorney Sullivan suggests Trial Counsel did address each of these claims during trial. ***Id.*** at 13-14. We agree with Attorney Sullivan.

At trial, Trial Counsel extensively cross-examined Victim. **See** N.T. Jury Trial at 48-49 (Victim's statement about where Appellant had his hands prior to the assault), 51-52 (Victim testifying that she was not sure if Appellant's gun was loaded, but she told the SANE nurse and previously testified at a prior proceeding the gun was not loaded), 53-57 (Victim's differing statements as to whether she thought Appellant was only going to harm himself or also harm her and whether Appellant purposefully or accidentally slammed her hand in the door), 59 (Victim did not initially tell the SANE nurse or police that Appellant prevented her from calling for help), 66 (Victim's differing statements as to whether it was easy to grab her phone back from Appellant

or if she had to pry it out of his hands), 67-69 (Victim testifying inconsistently with her prior statements regarding how hard she hit Appellant with her backpack).

Trial Counsel also cross-examined Corporal Kendrick regarding inconsistencies between Victim's statement to him and his observation of the placement of the belt in Victim's home when he secured it into evidence. **See** N.T. Jury Trial at 97 (the officer agreeing he did not "know if anything was moved around or if [the belt remained in the same place] between the time [he] investigated and the time of the . . . incident[.]"), 98 (Victim never reported that Appellant threw her phone or grabbed her neck). Lastly, Trial Counsel cross-examined the SANE nurse about Victim's statement. **See id.** at 121 (pointing out Victim's left hand was injured instead of her right hand; Victim had no neck injuries despite claiming Appellant "grabbed" her there), 122-124 (Victim did not report that Appellant's "knees were crushing her shoulders[,]" that he threw her phone, or that he grabbed her arm or leg; Victim only told the nurse that Appellant "pushed her back on the bed[;]" Victim told the nurse Appellant's gun was not loaded, and did not tell the nurse that she had to use the bathroom before Appellant retrieved his gun), 125 (Victim did not tell the nurse that she tried to go outside to her car or that Appellant was locked out), 125-26 (Victim stated she ran upstairs and her dog followed her).

The record demonstrates that Trial Counsel conducted a detailed cross examination of not only Victim, but of two other witnesses regarding the

inconsistencies in her prior statements and trial testimony. Further, Trial Counsel questioned Corporal Kendrick regarding preservation of the belt, specifically, whether the evidence was tampered with before he arrived at Victim's home. Appellant does not allege what further evidence Trial Counsel could have elicited during cross-examination and does not address the detailed lines of cross-examination Counsel did pursue at trial. Appellant merely implies he was not satisfied with Counsel's performance. As Appellant has not demonstrated any of the prongs of a proper ineffectiveness claim, no relief is due. *See Urwin*, 219 A.3d at 172.

Next, Appellant claims Trial Counsel was ineffective for failing to object to "prejudicial incendiary comments" the Commonwealth made during its closing argument. *Anders* Brief at 16. Attorney Sullivan suggests in his *Anders* brief that the Commonwealth's closing was not "outside the realm of fairness" and Trial Counsel was not ineffective for failing to object. *Id.* Notably, Appellant has not pointed to specific comments made by the Commonwealth that he believed were inflammatory.

Upon review of the record, we summarize that in its closing argument, the Commonwealth argued Victim was a credible witness despite some inconsistencies in her prior statements, Appellant's testimony was not credible, and that it presented evidence of each of the elements of the charged crimes. *See* N.T. Jury Trial at 185-89. Appellant has failed to identify any particularly objectionable comment in the Commonwealth's argument, nor has

- 16 -

he explained how the purported comments prejudiced him. For this reason, no relief is due. *See Urwin*, 219 A.3d at 172.

Appellant's next claim is that Trial Counsel was ineffective when he did not present a mental health-based defense or call an expert witness regarding Appellant's mental health. *Anders* Brief at 12. Attorney Sullivan contends that Trial Counsel did address Appellant's mental health throughout trial and Appellant has not alleged what other evidence could have been presented. *Id.* at 16-17.

We note Trial Counsel questioned Victim about Appellant's mental health. *See* N.T. Jury Trial at 46 (asking Victim if she said she "couldn't marry someone who might shoot themselves some day"), 50 (asking Victim if Appellant told her "he didn't know if he could keep his promise not to hurt himself"), 52 (Appellant told Victim "this would be his final good-bye"), 53-54, (Trial Counsel asked Victim if she was "pleading with [Appellant] not to kill himself" and if she was "willing to do anything" to prevent Appellant from hurting himself), 57 (asking Victim if she was concerned whether Appellant was going to kill himself), 71 (Victim told the 911 dispatcher she was scared Appellant was going to hurt himself). Further, Trial Counsel's closing highlighted, *inter alia*, that: (1) Appellant had "mental health struggles[;]" (2) he had a history with "threaten[ing] harm on himself[;]" (3) he intended to kill himself and give his "final good-bye" that day; and (4) Victim knew that "he[ was] on the verge of ending his life." *See id.* at 177-81, 184.

We emphasize Appellant also testified about his own mental health at trial. *See* N.T. Jury Trial at 131 (Appellant stating Victim was concerned for his mental health and on the day of the incident he was "struggling with a lot of self-harm and suicidal thoughts"), 135-37 (Victim told Appellant on the day of the incident — and he agreed — that he needed to get help for his mental health), 138-39 (Appellant stating he did not yet decide whether he was going to commit suicide and describing the gun as his "only option"), 142 (Appellant told Victim it was "the last time" that she or her family would see him), 156 (Appellant stated he called a friend to "talk [him] off the ledge" after the incident), 158 (Appellant loaded the gun and "started to contemplate . . . pulling the trigger[;]" Appellant checked himself into the hospital that same day).

We note:

> [I]t is well settled that the "failure to call [an expert] witness is not *per se* ineffective assistance of counsel as such decision generally involves a matter of trial strategy."  A claim that counsel was ineffective for failing to call a potential expert witness to testify at trial requires a petitioner to "establish that the witness existed and was available, that counsel was informed of the witness' existence, that the witness was ready and willing to testify[,] and that the absence of the witness prejudiced the defendant to a point where the defendant was denied a fair trial."

*Commonwealth v. Smith*, 167 A.3d 782, 793 (Pa. Super. 2017) (citations omitted).

Contrary to Appellant's purported claim, Trial Counsel presented his mental health as a central factor of the trial.  Trial Counsel elicited testimony,

- 18 -

from both Appellant on direct examination and Victim on cross-examination, that Appellant generally struggled with his mental health, and specifically did so on the day of the assault. In his closing argument, Trial Counsel also focused on Appellant's mental state prior to and during the incident. Thus, the record belies Appellant's claim that Trial Counsel did not present this defense. Regarding his claim that Trial Counsel should have called an expert witness, Appellant has not alleged that he has found a potential expert who would have testified on his behalf, nor what additional evidence the witness would present. For these reasons, Appellant has failed to demonstrate that Trial Counsel was ineffective related to this claim and no relief is due. *See Urwin*, 219 A.3d at 172; *Smith*, 167 A.3d at 793.

Appellant next claims Trial Counsel was ineffective when he failed to call character witnesses at trial. *Anders* Brief at 12. Attorney Sullivan states in his *Anders* brief that Appellant has not identified any potential character witnesses. *Id.* at 15.

An attorney's failure to call certain witnesses is not ineffectiveness *per se*. *Commonwealth v. Cox*, 983 A.2d 666, 693 (Pa. 2009). To establish ineffectiveness under such a claim, the petitioner must establish:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Puksar*, 951 A.2d 267, 277 (Pa. 2008).

- 19 -

As Attorney Sullivan argued in his brief, Appellant has not identified any character witnesses Trial Counsel should have presented at trial. Thus, Appellant has failed to establish any of the prongs of ineffectiveness and this claim must fail. *See Urwin*, 219 A.3d at 172; *Puksar*, 951 A.2d at 277.

Appellant next claims Trial Counsel was ineffective for appearing not to know the grading of one of his convictions during sentencing. *Anders* Brief at 12.

Relevant to this argument, the following interaction occurred at the sentencing hearing:

> [Commonwealth: C]learly here the main charge is [IDSI - threat of forcible compulsion]. That's the [first-degree felony].
>
> * * *
>
> [Trial Counsel: I] just need to point out, I don't think [IDSI - threat of forcible compulsion] was a [first-degree f]elony[.] Obviously there is a disagreement on the facts.
>
> [Trial Court]: Yeah, it is. [That charge] is a[ first-degree felony].

N.T. Sentencing, 1/28/21, at 6-7.

Appellant has not explained, and this Court is not aware, how this interaction caused him prejudice at any stage of his proceedings. Because Appellant did not establish he was prejudiced by this exchange, his claim must fail and no relief is due. *See Urwin*, 219 A.3d at 172.

Lastly, Appellant claims Trial Counsel was ineffective for failing to play a recording of Victim's 911 phone call. *See Anders* Brief at 12. Attorney Sullivan avers that at trial, Trial Counsel adequately cross-examined Victim

about the contents of the call, and thus provided a reasonable basis for his conduct. *See id.* at 15-16.

Regarding the reasonable basis prong of the ineffectiveness test:

[T]he PCRA court does not question whether there were other more logical courses of action which counsel could have pursued; rather, [the court] must examine whether counsel's decisions had any reasonable basis. Where matters of strategy and tactics are concerned, [a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. . . .

*Commonwealth v. Mason*, 130 A.3d 601, 618 (Pa. 2015) (citations & quotation marks omitted).

When determining what is reasonable, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. . . . Counsel's judgment must be reviewed from counsel's perspective at the time and should not be second-guessed if it falls within the realm of professional reasonableness. . . .

*Commonwealth v. McClellan*, 887 A.2d 291, 300 (Pa. Super. 2005) (citations omitted).

Relevant to this claim, Trial Counsel highlighted that when Victim called 911, she only told the dispatcher she was afraid Appellant was going to hurt himself. N.T. Jury Trial at 71. Victim confirmed during cross-examination that she did not tell the dispatcher that she was harmed, that she was "forced into sex[,]" she was "scared for [her] life or in any physical danger[,]" and when the dispatcher asked her if there was a "dispute[,]" Victim told them "not really[.]" *Id.* at 70-72. Trial Counsel also explained during closing arguments

that he did not play the 911 phone call because Victim "admitted to everything [he] would have played [on] the audio." *Id.* at 183.

As Attorney Sullivan points out in his brief, Trial Counsel explained during his closing argument why he did not play the 911 recording. *See Anders* Brief at 15; *see also* N.T. Jury Trial at 183. The PCRA court concluded Appellant failed to demonstrate Trial Counsel acted without a reasonable basis. *See* PCRA Ct. Op. at 4. We agree. Trial Counsel specifically stated there was no reason to play the audio because Victim "admitted" she did not tell the dispatcher Appellant assaulted her, that she was in danger, or that she was afraid for her own safety. *See* N.T. Jury Trial at 70-72, 183. Appellant has not demonstrated that Trial Counsel's chosen strategy lacked any reasonable basis, or an alternative strategy would have offered higher potential for success. *See Mason*, 130 A.3d at 618. Thus, Trial Counsel's actions fell "within the realm of professional reasonableness" and no relief is due. *See Urwin*, 219 A.3d at 172; *McClellan*, 887 A.2d at 300.

In conclusion, we determine Appellant has waived his claims regarding Trial Counsel's failure to request jury instructions because he did not raise them before the PCRA court, and his remaining claims of ineffectiveness are meritless. Further, our independent review of the record reveals there are no non-meritless issues to be raised on appeal. Accordingly, we grant Attorney Sullivan's petition to withdraw and affirm the PCRA court's Order dismissing Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/29/2023